OPINION
{¶ 1} Carlos D. Gaines appeals from the judgments of the Lake County Court of Common Pleas, in this consolidated case, sentencing him to three years imprisonment, and adjudicating him to be a sexual predator. We affirm.
 {¶ 2} December 9, 2005, in Case No. 05 CR 000791, the Lake County Grand Jury indicted Mr. Gaines on one count of attempted unlawful sexual conduct with a minor, a third degree felony in violation of R.C.2907.04(A) and R.C. 2923.02. *Page 2 
December 15, 2005, Mr. Gaines entered a written plea of "not guilty." January 18, 2006, in Case No. 06 CR 000036, the grand jury indicted him on one count of importuning, a fifth degree felony in violation of R.C.2907.07(B), and one count of criminal child enticement, a fifth degree felony in violation of R.C. 2905.05. January 20, 2006, Mr. Gaines pled "not guilty" to these charges.
 {¶ 3} January 17, 2006, Mr. Gaines filed a motion to suppress. January 19, 2006, the state moved to join the two cases, which motion the trial court granted by a judgment entry signed January 23, and filed January 24, 2006. January 23, 2006, Mr. Gaines also moved to withdraw his motion to suppress. That same day, jury trial commenced.
 {¶ 4} The facts are taken from the trial transcript.
 {¶ 5} October 14, 2005, Breyonna Hoofkin went to McDonald's with friends after leaving school. She spotted Mr. Gaines drive past, waiving to him, and he pulled into the parking lot. Miss Hoofkin knew Mr. Gaines as "Goldie." Her best friend, Tangela Sandifer had introduced them when Miss Sandifer dated Miss Hoofkin's brother (before dating Mr. Gaines). Miss Hoofkin asked Mr. Gaines for a ride home, which he promised to give her, after trading in his car. Miss Hoofkin was thirteen, Mr. Gaines, thirty.
 {¶ 6} Mr. Gaines eventually pulled off the freeway, at State Route 306, and into a motel parking lot, telling Miss Hoofkin he had missed his exit. While stopped in the parking lot, Miss Hoofkin testified that Mr. Gaines unbuckled and unzipped his trousers, and requested she perform oral sex on him, which she refused. Mr. Gaines then pulled his car out of the parking lot. *Page 3 
 {¶ 7} Officer Conrad Straube of the Mentor Police Department was sitting in his cruiser in the motel parking lot, writing a report, when Mr. Gaines pulled in. Officer Straube testified the Mentor police often stop in that parking lot, it being a popular location for drug transactions. His attention was piqued when nobody exited or entered Mr. Gaines' car over a period of several minutes. Consequently, he followed when Mr. Gaines left.
 {¶ 8} Officer Straube entered Mr. Gaines' license plate number in the LEADS system. He observed Mr. Gaines failing to signal both when switching lanes on Route 306 after leaving the motel parking lot, and then onto Route 2. Officer Straube decided to initiate a traffic stop once Mr. Gaines' car was safely onto the freeway. Officer Straube testified he learned from the LEADS system, after his decision to make the stop, that the owner of the vehicle he was following, Mr. Gaines, had a prior conviction as a sexual offender.[1]
 {¶ 9} On approaching Mr. Gaines' car, Officer Straube observed that Mr. Gaines had his pants unbuckled and unzipped, and that his underwear was plainly visible. He observed Miss Hoofkin in the front passenger seat, and testified she appeared nervous, refusing to look at him. Officer Straube informed Mr. Gaines of the reason for the traffic stop. Mr. Gaines being extremely nervous, Officer Straube requested Mr. Gaines step around to the rear of his vehicle, so they could talk more easily. Officer Straube noticed that Mr. Gaines needed to hold up his trousers after exiting the car. The officer asked Mr. Gaines what was wrong with his pants; whereupon the latter replied the button was *Page 4 
broken.[2] When asked why he did not just buckle the pants up, Mr. Gaines failed to reply. Mr. Gaines told the officer he was going to trade in his car, but had difficulty recounting where, exactly, this transaction was to occur.
 {¶ 10} Officer Straube noticed Miss Hoofkin nervously glancing around, trying to observe what was happening between himself and Mr. Gaines. As Mr. Gaines was becoming continuously more upset, Officer Straube requested he sit on the hood of the police cruiser, while he spoke with Miss Hoofkin. Miss Hoofkin was very nervous when the officer spoke with her. She gave an inaccurate age, before admitting to being only thirteen. Her account of what she and Mr. Gaines were doing varied from his. At one point, she grabbed the door handle, as if to exit.
 {¶ 11} Officer Straube called for backup, and informed Mr. Gaines that he was not under arrest, but requested that he get into the police cruiser. Mr. Gaines complied. Eventually, it was decided to transport both Miss Hoofkin and Mr. Gaines to the Mentor Police Department, for further investigation. It was at the department that Miss Hoofkin told police Mr. Gaines had requested sexual favors from her. She further told investigators that Mr. Gaines had requested she tell the police they stopped in the motel parking lot to look for his I.D.
 {¶ 12} Following the conclusion of trial January 24, 2006, the jury returned its verdict, finding Mr. Gaines guilty of attempted unlawful sexual conduct with a minor, and importuning, and not guilty of criminal child enticement. The trial court filed this verdict as a judgment entry January 27, 2006.
 {¶ 13} The trial court held a combined sexual offender classification and sentencing hearing March 1, 2006. By a judgment entry filed March 14, 2006, the trial *Page 5 
court found Mr. Gaines to be a sexual predator, and sentenced him to concurrent terms of three years on the unlawful conduct charge, and one year on the importuning charge. Mr. Gaines timely noticed appeal, making two assignments of error:
 {¶ 14} "[1.] Appellant Carlos Gaines did not receive the effective assistance of counsel both before and after his recent criminal trial.
 {¶ 15} "[2.] The trial court erred by labeling the appellant as a sexual predator after the court's sexual predator hearing."[3]
 {¶ 16} Under his first assignment of error, Mr. Gaines advances two arguments for finding his trial counsel ineffective. First, he asserts she failed in her duty by withdrawing the motion to suppress evidence discovered as a result of the traffic stop by Officer Straube. Second, he asserts she waived any constitutional objection to his sentences under the authority of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, by failing to make such objection at his sentencing.
 {¶ 17} When presented with ineffective assistance of counsel claims, the courts of Ohio apply the two-prong test articulated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. Cf. In re Roque, 11th Dist. No. 2005-T-0138, 2006-Ohio-7007, at ¶ 11. First, an appellant must show that counsel's performance was deficient. Id. In determining deficiency, courts apply an objective standard of reasonableness. Id. If deficiency is found, the appellant must then show that prejudice resulted. Id. Generally, "prejudice" is defined as a reasonable probability that the result of trial would have differed but for the deficient performance. State v. Clark, 11th Dist. No. 2002-A-0056, 2003-Ohio-6689, at ¶ 26. When claiming ineffective *Page 6 
assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of trial would have differed if the motion had been filed or pursued. Cf. Clark, at ¶ 28. If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it. State v.Edwards (Sep. 5, 2000), 10th Dist. No. 99AP-958, 2000 Ohio App. LEXIS 3971, at 8.
 {¶ 18} Mr. Gaines' counsel withdrew her motion to suppress based on our decision in State v. Hale, 11th Dist. No. 2004-L-105, 2006-Ohio-133. In that case, we held that when, "* * * there exists probable cause for a traffic stop, the reasonableness of the stop is fulfilled by the probable cause for the stop." Id. at ¶ 24. In this case, Officer Straube initiated his stop of Mr. Gaines due to the latter's failure to signal a lane change, then a turn. Consequently, the stop was valid in its inception.[4] Id.
 {¶ 19} Mr. Gaines argues that Officer Straube's probable cause for detaining him ended when the officer apprised him of the failure to signal, and there was no probable cause for further investigation of his activities with Miss Hoofkin. This is incorrect. If circumstances during a proper stop give rise to a reasonable and articulable suspicion of other illegal activity, an officer may detain a driver and his vehicle until that suspicion is satisfied. Hale at ¶ 39-40. Officer Straube knew that Mr. Gaines was a convicted sex offender. Finding him alone in a car with an underage female, his pants undone, with neither occupant able to give an articulable explanation of their activities, was sufficient *Page 7 
to give Officer Straube a reasonable and articulable suspicion that other criminal activity might be afoot. {¶ 20} This portion of the first assignment of error is without merit.
 {¶ 21} Mr. Gaines also argues that his trial counsel should have objected to his sentences pursuant to Foster. Mr. Gaines notes that the appellate courts have ruled that failure to raise an objection to the constitutionality of a sentence or sentences waives the alleged error.
 {¶ 22} We are mildly perplexed by this argument. Mr. Gaines' sentencing hearing was held March 1, 2006, several days after the announcement of Foster. Review of the transcript shows the learned and experienced trial judge correctly applied the standards for sentencing promulgated by the Supreme Court of Ohio in that decision. By excising the constitutionally infirm portions of the Ohio sentencing statutes, which required judicial fact finding in situations not allowed by the United States Constitution, Foster cured any presently-recognized problems with that statute. In a nutshell, there was nothing about Mr. Gaines' sentences which might be objected to under Foster.
 {¶ 23} This portion of the first assignment of error is without merit, as is the assignment.
 {¶ 24} Under his second assignment of error, Mr. Gaines objects that the trial court's classification of him as a sexual predator is against the manifest weight of the evidence.
 {¶ 25} For an offender to be designated a sexual predator requires proof by clear and convincing evidence of two elements: (1) that the offender has been convicted of a *Page 8 
sexually oriented offense; and, (2) that the offender is likely to engage in the future in one or more sexually oriented offenses.State v. Bounthisavath, 11th Dist. No. 2005-L-080, 2006-Ohio-2777, at ¶ 10. "Clear and convincing evidence" is, "* * * the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. It is an intermediate standard * * * being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." State v. Ingram (1992),82 Ohio App.3d 341, 346. Mr. Gaines contends the state failed to carry its burden on the second element.
 {¶ 26} We apply the criminal standard of review when considering manifest weight challenges to a sexual predator classification.Bounthisavath at ¶ 12. Under this standard, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new hearing must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 27} The role of the appellate court is to engage in a limited weighing of the evidence introduced at the hearing in order to determine whether the state appropriately carried its burden of persuasion.Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Further, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent *Page 9 
with the judgment or verdict. Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8.
 {¶ 28} In determining the second prong of the sexual predator test, the trial court is required to consider a nonexclusive list of ten factors, set forth at R.C. 2950.09(B)(3), including:
 {¶ 29} "(a) The offender's * * * age;
 {¶ 30} "(b) The offender's * * * prior criminal * * * record * * *;
 {¶ 31} "(c) The age of the victim * * *;
 {¶ 32} "(d) Whether the sexually oriented offense * * * involved multiple victims;
 {¶ 33} "(e) Whether the offender * * * used drugs or alcohol to impair the victim * * *;
 {¶ 34} "(f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence or dispositional order imposed * * * and, if the prior offense * * * was a sex offense or sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
 {¶ 35} "(g) Any mental illness or mental disability of the offender * * *;
 {¶ 36} "(h) The nature of the offender's * * * sexual conduct * * * with the victim * * * and whether the sexual conduct * * * was part of a demonstrated pattern of abuse;
 {¶ 37} "(i) Whether the offender * * * displayed cruelty or made one or more threats of cruelty;
 {¶ 38} "(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct." *Page 10 
 {¶ 39} This court has held that a showing by clear and convincing evidence of one of the R.C. 2950.09(B)(3) factors may be sufficient to uphold an offender's classification as a sexual predator.Bounthisavath at ¶ 31. In its thorough review of the R.C. 2950.09(B)(3) factors, both at the sexual offender classification hearing, and in its judgment entry, the trial court found six of the factors militated against Mr. Gaines. These included his own age (thirty), R.C.2950.09(B)(3)(a), as compared with that of his victim (thirteen). R.C.2950.09(B)(3)(c). They included his prior criminal record, R.C.2950.09(B)(3)(b), including the sexually oriented crime of sexual battery. Cf. R.C. 2950.09(B)(3)(f). They included his pattern of abuse, not toward one victim, but toward women and minors, generally. Cf. R.C.2950.09(B)(3)(h). They included such other "additional" factors, R.C.2950.09(B)(3)(j) as the court psychologist's opinion that Mr. Gaines is at a moderate high risk of re-offending, and his prior classification as a sexually oriented offender.
 {¶ 40} These findings by the trial court are supported by sufficient evidence in the record to easily pass the clear and convincing standard required.
 {¶ 41} The second assignment of error is without merit.
 {¶ 42} The judgment of the Lake County Court of Common Pleas is affirmed.
MARY JANE TRAPP, J., concurs, CYNTHIA WESTCOTT RICE, P.J., concurs in judgment only.
[1] Mr. Gaines was convicted of sexual battery, a third degree felony, in November 2000, in the Cuyahoga County Court of Common Pleas, being released from incarceration in December 2004.
[2] It transpired that the button was intact.
[3] Mr. Gaines timely appealed each of the consolidated cases below. The appeals have also been consolidated; the same assignments of error and briefs were filed in each appeal.
[4] Mr. Gaines notes that no traffic citation ultimately was issued to him. We agree that when the police make a traffic stop, they should issue a citation for the violation initially observed, if only for purposes of the record if further criminal activity is uncovered. However, Officer Straube's trial testimony clearly established he observed two failures to signal. *Page 1