OPINION
{¶ 1} Appellant, Shawn Kitcey, appeals from the judgment of the Ashtabula County Court of Common Pleas, based on a jury verdict, finding him guilty of the illegal assembly or possession of chemicals for the manufacture of drugs. We affirm.
 {¶ 2} On March 1, 2006, at approximately 3:43 a.m., Deputy Ronald C. Siebeneck, II of the Ashtabula County Sheriffs Department observed a blue Chevrolet Monte Carlo being driven at high speed, south, on Route 7 in Monroe Township. *Page 2 
Executing a traffic stop, the deputy found three men inside the Monte Carlo: its owner and driver, Kevin Donikowski, the front passenger, Ryan Sikora, and the rear passenger, Shawn Kitcey.
 {¶ 3} Eventually, a search of the car ensued. In the backseat, next to Kitcey, were two duffel bags filled with rubber gloves, wire cutters, a pipe wrench, pipe dope, 14 brass and metal fittings of various sizes, clear tubing, pliers, a screwdriver, paper towels, and coffee filters. Also in the backseat next to Kitcey was a dog food bag, with an empty propane tank inside, and a blue bag containing the following: two hypodermic needles, "two clear plastic pens with a burn mark on the rear of it," a small plastic container with cotton, and a piece of folded tin foil also with a burn mark on the end of it. Another empty propane tank, a garbage bag with hosing and fittings inside, and two full cans of Coleman fuel were in the trunk.
 {¶ 4} On May 22, 2006, the Ashtabula County Grand Jury filed an indictment of Kitcey on one count of illegal assembly or possession of chemicals to manufacture drugs, a felony of the third degree, in violation of R.C. 2925.041. Kitcey filed a written waiver of his right to appear at arraignment and pleaded "not guilty" on June 12, 2006. On September 8, 2006, the state moved the trial court to admit evidence of other acts resulting from events involving Kitcey on December 13, 2005, August 25, 2006, and September 2, 2006. By a judgment entry filed November 6, 2006, the trial court limited the admission of other acts evidence to the fact that Kitcey was found to have eight boxes of a cold remedy in his car during a stop made September 2, 2006.
 {¶ 5} Testifying for the state was Mr. Donikowski, the owner and driver of the car that was stopped on March 1, 2006. Mr. Donikowski testified that he, Kitcey, and *Page 3 
Mr. Sikora, the third occupant of the car that morning, were childhood friends. He stated that he and Mr. Sikora drove to Conneaut the morning in question, to pick up Kitcey and his girlfriend. Kitcey wanted to buy Coleman fuel at the Wal-Mart in Ashtabula. After dropping off his girlfriend in Conneaut, Kitcey asked and received Mr. Donikowski's permsission to put some things in the trunk of Mr. Donikowski's car. Mr. Donikowski asked Kitcey what the Coleman fuel placed in his trunk was used for and Kitcey responded it was one of the ingredients. Further, Mr. Donikoswski indicated that he knew the Coleman fuel was used to manufacture methamphetamine since he heard Kitcey talk about making methamphetamine. After placing the items in the trunk, Kitcey then asked Mr. Donikowski to drive him to a friend's house on Middle Road, in Conneaut. It was during this trip that the three friends were stopped by Deputy Siebeneck.
 {¶ 6} Mr. Donikowski asserted that the various items found in his backseat did not belong to him, but must have been Kitcey's property (even though he disclaimed having seen them put in his car). He testified that the three friends enjoyed using methamphetamine together, and that the bag with hypodermic needles was one he had seen Kitcey previously use when injecting himself with the drug. He testified that he knew the various items placed in his trunk were for making methamphetamine. He testified that he never saw Kitcey actually produce the drug.
 {¶ 7} Also testifying were the assistant manager of the Ashtabula Wal-Mart, where Kitcey allegedly purchased the Coleman fuel found in Mr. Donikowki's car; Deputies Siebeneck and Ginn of the Ashtabula County Sheriffs Department; and *Page 4 
Patrolman Wilt, of the Conneaut Police Department, who stopped Kitcey on September 2, 2006.
 {¶ 8} On November 7, 2006, the jury returned a verdict of "guilty" against Kitcey, which the trial court entered as a judgment the following day. The sentencing hearing was held on January 24, 2007. That same day, the trial court filed its judgment entry of sentence, imposing a two-year prison term, less one day jail-time credit, and revoking his driving privileges for six months.
 {¶ 9} Kitcey's first assignment of error states:
 {¶ 10} "Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 11} Kitcey raises two issues under his first assignment of error. First, he alleges the prosecutor engaged in misconduct by intentionally violating the November 6, 2006 judgment entry when she introduced evidence of "other acts" disallowed by the order. Kitcey asserts that the prosecutor acted improperly a second time when she referred to facts not in evidence, both during the state's case-in-chief and closing argument.
 {¶ 12} As noted by the Supreme Court of Ohio, "[t]he test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused."State v. Lott (1990), 51 Ohio St.3d 160, 165. (Citations omitted.) "A conviction will not be reversed because of prosecutorial misconduct unless it so taints the proceedings that a defendant is deprived of a fair trial." State v. Poling, 11th Dist. No. 2004-P-0044,2006-Ohio-1008, at ¶ 17. (Citations omitted.) In the instant case, Kitcey was not deprived of a fair trial. *Page 5 
 {¶ 13} In its entry dated November 6, 2006, the trial court limited other acts evidence to "numerous empty boxes of cold medication" found in Kitcey's vehicle during a traffic stop on September 2, 2006. In order to support his argument, Kitcey refers to an exchange between the prosecutor and Patrolman Wilt, the officer performing the traffic stop on September 2, 2006. The exchange is as follows:
 {¶ 14} "PATROLMAN WILT: I performed a traffic stop on [Kitcey's] vehicle on September 2nd of this year. During the course of the traffic stop, I use my canine to walk around the car at which time he alerted to the driver's side door.
 {¶ 15} "* * *
 {¶ 16} "MS. GARRETT: And inside the car, did you find — I only want to talk about one item. Will you tell us about one of the items that you found in the car?
 {¶ 17} "PATROLMAN WILT: They were boxes for precursors for the manufacturing of methamphetamine.
 {¶ 18} "MS. GARRETT: And what were those boxes?
 {¶ 19} "MR. ALTIER: Objection. Move to strike.
 {¶ 20} "THE COURT: Well, okay, I'm going to withhold ruling on the objection and see if you can call this other testimony additional testimony that would —
 {¶ 21} "MS. GARRETT: Specifically, what would be those items?
 {¶ 22} "PATROLMAN WILT: These were Sudafed cold medicine boxes.
 {¶ 23} "MS. GARRETT: How many boxes?
 {¶ 24} "PATROLMAN WILT: Eight.
 {¶ 25} "MS. GARRETT: Okay, what made you say that those were precursors for meth? *Page 6 
 {¶ 26} "PATROLMAN WILT: Due to other things that were found in the vehicle —
 {¶ 27} "MS. GARRETT: Your Honor, can we approach?
 {¶ 28} "THE COURT: Alright.
 {¶ 29} "* * *
 {¶ 30} "MS. GARRETT: I instructed the officer, based on your ruling, not to talk about any other items found in the car, so I wasn't going to develop that.
 {¶ 31} "THE COURT: Yeah, I think that's a good idea but, I don't know, I might have to sustain his objection on this thing on the basis for why he thought it was a precursor.
 {¶ 32} "MS. GARRETT: I can develop that without telling.
 {¶ 33} "THE COURT: All right.
 {¶ 34} "* * *
 {¶ 35} "MS. GARRETT: Officer Wilt, in your capacity as a patrolman for Conneaut Police Department, you have training and experience in methamphetamine?
 {¶ 36} "PATROLMAN WILT: I've taken several courses, correct.
 {¶ 37} "MS. GARRETT: And you have had experience to come in contact with meth labs?
 {¶ 38} "PATROLMAN WILT: Correct.
 {¶ 39} "MS. GARRETT: Based on that experience and knowledge, can you tell us about the role of cold medicine in making meth?
 {¶ 40} "PATROLMAN WILT: It is one —
 {¶ 41} "MR. ALTIER: Objection.
 {¶ 42} "THE COURT: Overruled. Can you answer that? *Page 7 
 {¶ 43} "PATROLMAN WILT: It is one of the primary ingredients, one of the main necessary ingredients in the manufacturing of methamphetamine.
 {¶ 44} "MS. GARRETT: And in this case, there are eight boxes?
 {¶ 45} "PATROLMAN WILT: Correct
 {¶ 46} "MS. GARRETT: I have no further questions. Thank you.
 {¶ 47} Kitcey claims the combination of the prosecutor's questions and the responses of Patrolman Wilt left the jury with the inference that the other items found in the vehicle were used in the manufacturing of methamphetamine. However, the exchange between the prosecutor and Patrolman Wilt did not rise to the level of misconduct for reversal. While the answer given by Patrolman Wilt may have been in violation of the trial court's order regarding other acts evidence, the question placed by the prosecutor was not improper. Pursuant to the terms of the court's judgment entry, she sought information on only one item found in the vehicle on September 2, 2006. She quickly sought to correct the mistake and elicited the testimony that cold medications, themselves, are precursors to methamphetamine manufacture. Consequently, "the nature of the remarks" made by the prosecution regarding other acts is insufficient to support a finding of misconduct. The jury was never told what the prohibited "other things" were.
 {¶ 48} Kitcey also alleges the prosecutor engaged in misconduct by referring to facts not in evidence. He bases this contention on certain questions placed to Mr. Donikowski by the prosecutor, intended to elicit his knowledge of whether Kitcey made methamphetamine. During direct examination, the prosecutor asked various questions revealing that Mr. Donikowski had allegedly heard Kitcey, Mr. Sikora, and others *Page 8 
discuss the manufacture of methamphetamine, and that he "knew" the items placed in his car's trunk by Kitcey were used in that process. On cross-examination, defense counsel obtained an admission from Mr. Donikowski that he had testified at a preliminary hearing to never knowing Kitcey to make methamphetamine. On redirect examination, Mr. Donikowski stated this discrepancy was due to being afraid at the preliminary hearing. Also during redirect, the trial court sustained a series of objections to questions directly asking Mr. Donikowski when or if he became aware of Kitcey's involvement in methamphetamine production. Finally, in summation, the assistant prosecutor asserted to the jury that Mr. Donikowski knew Kitcey made the drug.
 {¶ 49} A prosecutor is "entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." State v. Smith (1997), 80 Ohio St.3d 89, 111. Further, we recognize prosecutors "may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by the admissible evidence." State v. Lott,51 Ohio St.3d at 166. However, upon review, we find that the prosecutor's statements did not allude to inadmissible evidence. It was Mr. Donikowski who, based on his knowledge, indicated the items placed in the trunk of his vehicle were used for the manufacturing of methamphetamine. We further reject Kitcey's argument that the prosecutor was arguing facts not in evidence during the redirect of Mr. Donikowski. Defense counsel objected to these questions posed by the prosecutor and the trial court sustained all of the objections. *Page 9 
 {¶ 50} Therefore, upon a thorough review of the record, we find no misconduct occurred that would have affected the outcome of the trial. Kitcey's first assignment of error is overruled.
 {¶ 51} Kitcey's second assignment of error states:
 {¶ 52} "Appellant was prejudiced by the ineffective assistance of trial counsel."
 {¶ 53} Under his second assignment of error, Kitcey again raises two issues, each relating to alleged ineffective assistance of counsel.
 {¶ 54} In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. See,In re Roque, 11th Dist. No. 2005-T-0138, 2006-Ohio-7007, at ¶ 11. (Citations omitted.) First, it must be determined that counsel's performance fell below an objective standard of reasonableness. Id. Second, it must be shown that prejudice resulted. Id. Prejudice exists if the results of the trial would have been different but for counsel's ineffectiveness. Id. Appellate courts must always recall properly-licensed counsel is presumed competent and that trial counsel is afforded strong deference regarding strategy. Id.
 {¶ 55} Kitcey asserts ineffective assistance due to failure by trial counsel to file a motion to suppress regarding the search of Mr. Donikowki's car and the seizure of items from it.
 {¶ 56} "When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of trial would have differed if the motion had been filed or pursued." State v.Gaines, 11th Dist. Nos. 2006-L-059 and 2006-L-060, *Page 10 2007-Ohio-1375, at ¶ 17, citing State v. Clark, 11th Dist. No. 2002-A-0056, 2003-Ohio-6689, at ¶ 28. "If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it." Gaines, supra, at ¶ 17, citingState v. Edwards (Sept. 5, 2000), 10th Dist. No. 99AP-958, 2000 Ohio App. LEXIS 3971, at *8.
 {¶ 57} Kitcey had no possessory interest in the car; rather, it belonged to Mr. Donikowski. Further, he does not appear to have asserted a possessory interest in the items seized from the car. Without a possessory interest in the car or property subject of the search and seizure, Kitcey lacked standing to challenge the search. State v.Tibbets (2001), 92 Ohio St.3d 146, 165, citing Rakas v. Illinois (1978),439 U.S. 128, 148 and State v. Otte (1996), 74 Ohio St.3d 555, 559. Kitcey's trial counsel was not ineffective for failing to file a motion since case law establishes it would have been futile. Gaines at ¶ 17.
 {¶ 58} In his second issue, Kitcey alleges ineffective assistance of trial counsel due to counsel's failure to object both to the testimony solicited from Mr. Donikowski regarding his knowledge that Kitcey manufactured methamphetamine, and to the other acts testimony of Patrolman Wilt, described above. Kitcey further contends trial counsel should have moved for a mistrial when the prosecutor introduced evidence of "other items" found in his vehicle on September 2, 2006.
 {¶ 59} The declaration of a mistrial is an extreme remedy. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, citing Illinois v. Somerville (1973), 410 U.S. 458, 462-463
and Arizona v. Washington (1978), 434 U.S. 497, 505-506. "The *Page 11 
Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."'" State v. Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 64, quoting State v. Mason (1998),82 Ohio St.3d 144, 157-158, quoting Strickland, 466 U.S. at 689.
 {¶ 60} Further, it is untrue that trial counsel failed to object to the testimony of Patrolman Wilt. As stated above, trial counsel objected as soon as Patrolman Wilt was asked about the boxes of Sudafed found in Kitcey's car on September 2, 2006. The trial court held its ruling in abeyance, pending development of the line of questioning by the state. It was shortly thereafter the patrolman mentioned the existence of other items in the car that day — a reference forbidden by court order. The state was allowed to correct this improper comment. Consequently, no ineffective assistance attaches.
 {¶ 61} Kitcey argues defense counsel failed to object to the violation of the trial court's order concerning other acts evidence and to the fact that the prosecutor was arguing facts not in evidence.
 {¶ 62} "`[Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.'" State v. Johnson,112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 140. (Citations omitted.) *Page 12 
 {¶ 63} The alleged failures of defense counsel to object did not prejudice Kitcey or deny him a fair trial. Further, as mentioned previously under Kitcey's first assignment of error, the prosecutor did not argue facts that were not in evidence. Moreover, the exchange between the prosecutor and Patrolman Wilt did not violate the trial court's entry dated November 7, 2006. Therefore, Kitcey's second assignment of error is without merit.
 {¶ 64} Kitcey's third assignment of error states:
 {¶ 65} "The trial court committed plain error by allowing admission of other acts evidence highly prejudicial to appellant."
 {¶ 66} Kitcey does not claim the November 6, 2006 judgment entry of the trial court allowing other acts evidence was defective. However, under this assignment of error, Kitcey again argues the statements of Patrolman Wilt violated the court's order precluding testimony of "other items" found in the vehicle on September 2, 2006. In his brief, Kitcey contends that since the evidence submitted was not objected to, he must demonstrate plain error. We note, however, that defense counsel did object when Patrolman Wilt stated the boxes found in Kitcey's car on September 2, 2006 "were boxes for precursors for the manufacturing of methamphetamine." While defense counsel moved to strike this statement, the trial court withheld the ruling on the objection. As this line of questioning developed, Patrolman Wilt stated "other things" were found in the vehicle. At this point, a sidebar was held and the prosecutor assured the trial court that she could develop the questioning "without telling" of the other items found in the vehicle. Therefore, since an objection was made by defense counsel, "[t]he admission of evidence lies within the broad discretion of a trial court, and a reviewing *Page 13 
court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v.Issa (2001), 93 Ohio St.3d 49, 64. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 67} In order to support his argument, Kitcey claims that since the jury was aware that "other items" were found in the vehicle, the only inference they could draw was the "other items" were linked to the manufacturing of methamphetamine. However, the jury never learned the identity of the "other items" found in the vehicle on September 2, 2006. Furthermore, the record provides ample, admissible evidence upon which the jury could reasonably find Kitcey guilty. The trial court did not abuse its discretion by allowing the statements of Patrolman Wilt. Therefore, the third assignment of error lacks merit.
 {¶ 68} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
 MARY JANE TRAPP, J., concurs, COLLEEN MARY OTOOLE, J., dissents. *Page 1