[Cite as *State v. Brooks*, 2013-Ohio-58.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2011-L-049** |
| FELIX P. BROOKS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 10 CR 000304.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*R. Paul LaPlante*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Felix P. Brooks, appeals from a judgment of the Lake County Court of Common Pleas, sentencing him for trafficking in marijuana and operating a vehicle under the influence of alcohol ("OVI").

{¶2} Appellant was indicted on five counts: trafficking in marijuana, a felony of the fifth degree, in violation of R.C. 2925.03(A)(2), with forfeiture specifications; OVI, a

misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1); possession of marijuana, a minor misdemeanor, in violation of R.C. 2925.11; and marked lanes, a minor misdemeanor, in violation of R.C. 4511.33. Appellant filed a waiver of his right to be present at the arraignment and the trial court entered a not guilty plea on his behalf.

{¶3} Thereafter, appellant filed a motion to suppress evidence. Appellant claimed the officer lacked probable cause to execute a traffic stop; failed to properly perform standardized field sobriety tests, including the horizontal gaze nystagmus ("HGN"), the one-leg stand, and the walk-and-turn; and lacked probable cause to arrest him. The state filed a response and the court later held a suppression hearing.

{¶4} The only witness to testify was James Coolick, a six-year patrolman with the Wickliffe Police Department. Patrolman Coolick obtained his certification for alcohol detection and prosecution training from the Highway Patrol Academy and has been involved in approximately 60 OVI arrests. He was taught to perform and is certified in performing the three main National Highway Traffic Safety Administration ("NHTSA") standardized field sobriety tests, including the HGN, one-leg stand, and walk-and-turn. The NHTSA manual was admitted into evidence during the suppression hearing without objection.

{¶5} Patrolman Coolick's testimony reveals the following sequence of events. Around 2:00 a.m. on May 5, 2010, he observed appellant driving with a female passenger on Euclid Avenue, a four-lane road. He initially observed appellant's vehicle weaving within its lane. Appellant's car was "straddling" and came close to striking the

2

curb, then weaved back and crossed over the dotted white line. The incident was recorded via dashboard video, admitted into evidence without objection as "Exhibit 2," and played in open court.

{¶6} Appellant made a right turn into the parking lot of the Plaza Motel, where he had rented a room. Based on his observation of appellant's vehicle weaving within its lane, a violation of Wickliffe Ordinance 331.08, Patrolman Coolick activated his cruiser's overhead lights and followed appellant into the motel parking lot. Patrolman Coolick approached the vehicle and advised appellant of the marked lanes violation. Appellant is a Jamaican native and speaks with an accent. He provided an identification card but was unable to provide his driver's license or proof of insurance. Appellant claimed that the Euclid police did not return his proof of insurance when he was stopped on a prior occasion.

{¶7} Patrolman Coolick testified that appellant's eyes were very bloodshot and watery, and that he noticed a distinct odor of an alcoholic beverage on appellant's person. Appellant stated he had been drinking at a club and had consumed two beers, specifically Guinness Stouts. Patrolman Coolick felt that appellant was a little incoherent because he had to repeat questions to appellant several times, and appellant answered many questions with unrelated responses. For example, appellant told Patrolman Coolick that he was a student at Tri-C and grabbed a folder full of school papers to show him. Patrolman Coolick requested that appellant exit his car in order to perform field sobriety tests. Appellant complied with the request. The tests were done on a reasonably dry, hard, level, nonslippery surface with sufficient light and room.

3

{¶8} The first test was the HGN. The NHTSA manual provides that the officer should instruct the suspect that he is going to check the suspect's eyes, that the suspect should keep his head still and follow the stimulus with his eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer should then check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer should then check the suspect for nystagmus[1] at maximum deviation and for onset of nystagmus prior to 45 degrees. The manual instructs the officer to repeat each portion of the HGN test, and further sets forth guidelines for the amount of time each portion of the test should take.

{¶9} Appellant had difficulty keeping his eyes open and began laughing. Patrolman Coolick noted a lack of smooth pursuit in both eyes, a distinct nystagmus at maximum deviation in both eyes, and an onset of nystagmus at 45 degrees. Appellant moved his head and failed to follow the stimulus. However, Patrolman Coolick admitted that he did not repeat the procedures when checking for smooth pursuit, nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees in accordance with the NHTSA manual.

{¶10} The second test was the one-leg stand. According to the NHTSA manual, the suspect is to listen to instructions while keeping his feet together and arms at his side. The suspect should be instructed to raise either leg with the foot approximately six

_____

1. "Nystagmus" is "[a] rapid involuntary jerking or twitching of the eyes, sometimes caused by ingesting drugs or alcohol." Black's Law Dictionary, 9th Ed.

4

inches off of and parallel to the ground, keeping his legs straight and arms at his side. The suspect should then be instructed to count one thousand and one, one thousand and two, etc. until he reaches 30. The officer is instructed to time the test and to terminate it after 30 seconds. The manual lists four clues, including a suspect swaying while balancing, using arms for balance, hopping, or putting his foot down. The observation of two of four clues suggests impairment. The test is considered a failure if the subject puts his foot down three or more times.

{¶11} The video shows that before beginning this test, appellant, with both feet on the ground, bent over to tie his shoe. He did not exhibit any problems with balance at that time. The video shows appellant starting the instruction phase of the test standing with his feet together, arms at his side, and listening to the officer. Patrolman Coolick did not explicitly tell appellant not to perform the test until he was told but he prefaced his instructions with, "when I tell you to start." Patrolman Coolick did not explicitly ask appellant if he understood the instructions thus far, but did ask appellant after each instruction, "ok?"

{¶12} When appellant was instructed to begin, he did so correctly indicating he understood the proper procedure. Patrolman Coolick did not tell appellant to keep his foot parallel to the ground or keep both legs straight, but he demonstrated this procedure to appellant and appellant attempted to do so during the test. Patrolman Coolick specifically told appellant the remaining instructions, including to look at his foot and that while keeping his foot raised, to count out loud in the following manner, "one thousand and one, one thousand and two * * *." At the end of the instructions phase,

5

Patrolman Coolick did not specifically ask appellant if he understood, but asked him, "think you can do that?"

{¶13} Appellant stated that he was nervous and later staggered several times. Patrolman Coolick allowed appellant to perform the test numerous times and repeatedly told him not to be nervous. Appellant said that he had a medical condition affecting his elbow and foot as a result of an old injury. Patrolman Coolick gave him a choice of which leg he wanted to use for the test. Despite ten attempts, appellant could not keep one foot off the ground for 30 seconds in accordance with the test, showing balance problems. Appellant's attempts from keeping one foot off the ground ranged from a mere one second up to 16 seconds.

{¶14} The third and final test was the walk-and-turn. The NHTSA manual requires an officer to direct a suspect to stand heel-to-toe, keep his or her hands at their side, and listen to instructions for the test. Once the instruction phase is complete, the suspect then takes nine heel-to-toe steps in one direction, and nine back to the starting point. The NHTSA manual lists eight clues an officer should look for as the suspect completes the test, including: unable to keep balance while listening to the instructions; starting before the instructions are finished; stopping while walking; failing to touch heel-to-toe; stepping off the line; using arms to balance; improperly turning; and taking an incorrect number of steps. The NHTSA manual states that two clues out of eight indicate impairment.

{¶15} The video shows that Patrolman Coolick correctly instructed appellant to stand with his feet in a heel-to-toe position, place his arms at his side, and listen to the officer's instructions. The NHTSA manual required the officer to instruct appellant to

6

place his right foot on the line ahead of his left foot. However, Patrolman Coolick instructed appellant to place his feet in the reverse order.

{¶16} Appellant was required to maintain his balance in a heel to toe position while listening to and remembering the instructions but he failed to do so twice. Patrolman Coolick correctly told appellant to place his hands down at his sides and not to begin the test until told to do so. Appellant attempted to prematurely start the test twice and Patrolman Coolick told him to "hang on." Patrolman Coolick did not specifically ask appellant if he understood the instructions thus far, but rather ended each instruction with the question, "ok?"

{¶17} Patrolman Coolick correctly told appellant that when he is told to start, he is to take nine heel to toe steps, turn, and take nine heel to toe steps back. Appellant was instructed that while walking, he was to keep his front foot on the line, keep his arms at his side, and count the steps out loud. He was not instructed to watch his feet at all times. However, Patrolman Coolick showed appellant how to walk the nine steps, while looking at his feet, make the turn, and then return using nine steps. Patrolman Coolick did not instruct appellant that once he started walking, he was not to stop until he had completed the test. Patrolman Coolick also did not tell appellant to count his first step as "one." However, appellant began counting from "one" when he was told to start the test. Patrolman Coolick correctly asked appellant the second time if he understood the instructions. While walking to the turn point, appellant appeared to have balance problems and paused for a second or two at step five.

{¶18} Patrolman Coolick concluded that appellant failed all three field sobriety tests and arrested him for OVI. Prior to towing appellant's vehicle, an inventory search revealed marijuana in the trunk, leading to the drug charges.

{¶19} The trial court granted appellant's motion to suppress the results of the HGN test because Patrolman Coolick failed to administer the test in substantial compliance with the NHTSA manual. Specifically, Officer Coolick did not perform the first and second phases of the test twice as required by the NHTSA manual. However, the court denied appellant's motion to suppress the results of the one-leg stand and walk-and-turn tests. The trial court also denied appellant's motion to suppress all evidence obtained from his arrest.

{¶20} Appellant subsequently withdrew his not guilty plea and entered an oral and written plea of no contest to trafficking in marijuana and OVI as charged in the indictment. Following a hearing, the court accepted appellant's no contest plea, found him guilty, and dismissed the remaining counts in the indictment.

{¶21} Appellant was sentenced to two years of community control. The court imposed conditions which included, inter alia: serving 60 days in jail, three days of which are mandatory, with one day of credit for time served; completing a jail treatment program; attending two AA meetings per week; and submitting to random drug and alcohol screenings. The court also suspended appellant's driver's license for six months. His sentence was stayed pending appeal. Appellant filed a timely appeal and asserts the following assignments of error:

{¶22} "[1.] The trial court erred when it denied the defendant-appellant's motion to dismiss and/or suppress where the police had no probable cause to arrest the

defendant-appellant for operating a vehicle under the influence, in violation of the defendant-appellant's right to be free from unreasonable search and seizure as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution.

**{¶23}** "[2.] The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."

**{¶24}** In his first assignment of error, appellant argues the trial court erred in partially denying his motion to suppress because his constitutional rights against unreasonable search and seizure were violated. Appellant does not challenge the basis for his stop. Rather, he challenges the probable cause finding for his arrest.

**{¶25}** Appellant asserts Patrolman Coolick did not conduct the field sobriety tests in substantial compliance with NHTSA standards and, thus, did not have probable cause to arrest him for OVI. He agrees the court properly suppressed the HGN test after finding it was not administered in substantial compliance with the NHTSA manual. However, appellant contends the court erred in concluding that Patrolman Coolick properly administered the one-leg stand and walk-and-turn tests, and that he failed both.

**{¶26}** In addition, appellant alleges the court erred in finding that other factors also supported a finding of probable cause, including: bloodshot, watery eyes; an odor of alcohol; a slight incoherence; appellant's admission to consuming two beers; and that

9

he "repeatedly raised tangential subjects unrelated to his traffic stop of the officer's questions."

{¶27} The Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as Article I, Sections 10 and 14 of the Ohio Constitution, prohibit unreasonable search and seizure of any person without probable cause. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). In determining whether the police had probable cause to arrest an individual for OVI, appellate courts consider whether the police, at the moment of arrest, had sufficient information derived from a reasonably trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence. *State v. Wojewodka*, 11th Dist. No. 2009-P-0029, 2010-Ohio-973, ¶18, citing *Beck* at 91.

{¶28} "'[P]robable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's * * * performance on one or more of these tests. *The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded.*'" *Wojewodka, supra,* at ¶19, quoting *State v. McNulty*, 11th Dist. No. 2008-L-097, 2009-Ohio-1830, ¶20. (Emphasis added).

{¶29} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Thereafter, the appellate court must independently determine whether those factual

10

findings meet the requisite legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶30}  In order for field sobriety testing evidence to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19; *State v. Brown*, 166 Ohio App.3d 638, 2006-Ohio-1172, ¶25 (11th Dist.); *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶20. Part of the state's burden includes demonstrating the NHTSA requirements through competent testimony and/or introducing the applicable portions of the NHTSA manual. *Brown* at ¶19-25.

{¶31}  On that point, this court has held that "a law enforcement officer is not required to provide the accused with the NHTSA instructions verbatim. * * * 'Instead, the instructions provided may deviate from the quoted language found in the NHTSA manual so long as they are sufficient to apprise the accused of the manner in which [he] is to perform the test.' * * * To demand more 'amounts to strict compliance with the NHTSA standards, which is not necessary; rather, clear and convincing evidence of substantial compliance with the NHTSA standards is sufficient.'" *State v. King*, 11th Dist. No. 2009-P-0040, 2010-Ohio-3254, ¶26. (Citations omitted.) Furthermore, "substantial compliance," synonymous with the term "substantial performance," is defined as, "[t]he rule that if a good-faith attempt to perform does not precisely meet the terms of an agreement or statutory requirements, the performance will still be considered complete if the essential purpose is accomplished." Black's Law Dictionary, 9th Ed.

11

{¶32} With respect to the one-leg stand test, appellant specifically contends Patrolman Coolick failed to do the following in accordance with the NHTSA manual: tell him not to perform the test until told to do so; ask him if he understood the instructions; tell him to keep his toe pointed when he raised his foot; instruct him to keep both legs straight; tell him to count until told to stop; and let him know that if he put his foot down one time during an attempt, he was allowed to pick his foot up and begin counting where he left off.

{¶33} As stated, Patrolman Coolick did not explicitly tell appellant not to perform the test until he was told but he prefaced his instructions with, "when I tell you to start." Patrolman Coolick did not explicitly ask appellant initially if he understood the instructions but did ask him after each instruction, "ok?" When appellant was instructed to begin, he did so correctly indicating he understood the proper procedure. Patrolman Coolick did not tell appellant to keep his toe pointed or keep both legs straight, but he demonstrated this procedure to appellant. Patrolman Coolick did not specifically tell appellant to count until told to stop, but he told him to count out loud in the following manner, "one thousand and one, one thousand and two * * *." Also, Patrolman Coolick did not tell appellant that if he put his foot down during an attempt, he was allowed to pick up his foot and begin counting where he left off. However, the majority of the time, appellant put his foot down within a few seconds and on two attempts, after only one second. At the end of the instructions phase, Patrolman Coolick did not specifically ask appellant if he understood, but asked him, "think you can do that?"

{¶34} Although some of the instructions Patrolman Coolick gave appellant were not verbatim from the NHTSA manual and deviated slightly from the quoted language

12

found in the NHTSA, they were sufficiently comprehensive to apprise appellant of the manner in which he was to perform the test. *King, supra,* at ¶26. Furthermore, nothing in the record indicates appellant failed to understand the administration procedure.

{¶35} Appellant said that he had a medical condition affecting his elbow and foot as a result of an old injury. Patrolman Coolick gave him a choice of which leg he wanted to use for the test. Appellant also stated that he was nervous. Patrolman Coolick allowed appellant to perform the test numerous times and repeatedly told him not to be nervous. The NHTSA manual specifies that the test is considered a failure if the subject puts his foot down three or more times. Despite ten attempts, appellant could not keep one foot off the ground for 30 seconds in accordance with the test, showing balance problems.

{¶36} Accordingly, Patrolman Coolick administered the one-leg stand test in substantial compliance with NHTSA standards and appellant failed the test.

{¶37} With regard to the walk-and-turn test, appellant specifically contends Patrolman Coolick failed to do the following in accordance with the NHTSA manual: initially instruct him not to begin the test until told to do so; ask him if he understood the instructions; tell him to watch his feet at all times; tell him to keep his hands at his side as he was walking; tell him to start counting at "one;" tell him that once the test began, he should not stop walking until the test was completed; and incorrectly tell him to start by placing his left foot in front of his right, rather than behind.

{¶38} As stated, appellant attempted to prematurely start the test twice and Patrolman Coolick told him to "hang on." Patrolman Coolick did not specifically ask appellant initially if he understood the instructions but he ended each instruction with the

13

question, "ok?"  Appellant was not instructed to watch his feet at all times.  However, Patrolman Coolick showed appellant how to walk the nine steps, while looking at his feet, make the turn, and then return using nine steps.  Patrolman Coolick correctly told appellant that when he was told to start, he was to take nine heel to toe steps, turn, and take nine heel to toe steps back.  Appellant was instructed that while walking, he was to keep his front foot on the line, keep his arms at his side, and count the steps out loud.  Patrolman Coolick did not tell appellant to count his first step as "one."  However, appellant began counting from "one" when he was told to start the test.  Patrolman Coolick did not instruct appellant that once he started walking, he was not to stop until he had completed the test.  Also, Patrolman Coolick instructed appellant to place his feet in the reverse order.

{¶39}  Again, although some of the instructions Patrolman Coolick gave appellant deviated from the NHTSA manual and did not include the verbatim language, they were sufficiently comprehensive to apprise appellant of the manner in which he was to perform the test.  *King, supra,* at ¶26.  Furthermore, nothing in the record indicates appellant failed to understand the administration procedure.

{¶40}  Patrolman Coolick correctly instructed appellant to stand with his feet in a heel to toe position, place his arms at his side, and listen to the officer's instructions.  Appellant was required to maintain his balance in a heel to toe position while listening to and remembering the instructions but he failed to do so twice.  While walking to the turn point, appellant appeared to have balance problems and paused for a second or two at step five.

14

**{¶41}** Accordingly, we determine there is clear and convincing evidence that Patrolman Coolick administered the walk-and-turn test in substantial compliance with NHTSA standards and that appellant failed the test.

**{¶42}** Thus, based on the foregoing, we conclude the court did not err in denying appellant's motion to suppress the one-leg stand and walk-and-turn tests.

**{¶43}** We turn now to appellant's second argument regarding the other factors supporting the trial court's finding of probable cause. As stated, "'the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded.'" *Wojewodka, supra,* at ¶19, quoting *McNulty*, *supra*, at ¶20. Thus, even if the one-leg stand and walk-and-turn tests had not been administered according to NHTSA guidelines, for the reasons that follow, we conclude that probable cause to conduct an arrest still existed.

**{¶44}** As previously noted, in addition to the court's findings that the one-leg stand and walk-and-turn tests were administered in substantial compliance with NHTSA standards and that appellant failed both tests, the court also found that other factors supported probable cause for the OVI arrest. Specifically, the court's other factors included: appellant's bloodshot, watery eyes; an odor of an alcoholic beverage; a slight incoherence; appellant's admission to consuming two beers; and that he "repeatedly raised tangential subjects unrelated to his traffic stop of the officer's questions."

**{¶45}** Appellant stresses that the odor of alcohol was neither strong nor pervasive and that Patrolman Coolick did not inquire about the time frame regarding when he consumed the two beers. He also stresses that he has a Jamaican accent and

was cooperative in answering questions. As stated, Patrolman Coolick testified that he observed appellant's vehicle around 2:00 a.m. weaving within its lane, "straddling" and coming close to striking the curb, then weaving back and crossing over the dotted white line, a marked lanes violation. Again, the incident was recorded via dashboard video, admitted into evidence without objection, played at the suppression hearing, and viewed by this court.

{¶46} Patrolman Coolick further testified that after stopping appellant's car for the marked lanes violation, he noticed appellant's eyes were very bloodshot and watery, and also noticed a distinct odor of an alcoholic beverage on appellant's person. "An officer's detection of an odor of an alcoholic beverage is a relevant factor to determine if the officer has probable cause to arrest a suspect for [OVI]." *Djisheff, supra,* at ¶37. Appellant stated that he was at a club and admitted consuming two beers. "An admission by a driver that he has consumed alcoholic beverages is a factor to be considered in a probable cause determination for a [OVI] arrest." *Id.* at ¶36.

{¶47} Patrolman Coolick felt that appellant was a little incoherent because he had to repeat questions to him several times and appellant answered many questions with inappropriate responses. Patrolman Coolick's testimony and the dashboard video reveal that appellant was inappropriately laughing during the officer's attempts to instruct him. Appellant also had difficulty maintaining his balance at times.

{¶48} Accordingly, based on Patrolman Coolick's testimony and the dashboard video, we find that the totality of the circumstances, with respect to the "other factors," enumerated above, also supported a finding of probable cause to arrest appellant for OVI.

16

**{¶49}** Appellant's first assignment of error is without merit.

**{¶50}** In his second assignment of error, appellant contends his right to due process was violated due to the ineffective assistance of his counsel. Appellant asserts his trial counsel was ineffective because he failed to challenge the impoundment and search of his vehicle following his arrest for OVI. Appellant alleges there was no need to tow his car since it was legally parked in the parking lot of the motel where he had rented a room. Appellant maintains the impoundment and subsequent inventory of his car, pursuant to "police policy," would have been suppressed by the court had his counsel pursued such issues in the motion to suppress.

**{¶51}** In evaluating ineffective assistance of counsel claims, we apply the following two-part test enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

**{¶52}** "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."

17

**{¶53}** "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. "To warrant reversal, '(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), quoting *Strickland*, *supra*, at 694.

**{¶54}** It is well-settled under both federal and state law that administrative inventory searches of lawfully impounded vehicles, if performed according to established procedures, are not unreasonable under the Fourth Amendment unless the search is a pretext concealing an investigatory police motive. *State v. Walker,* 11th Dist. No. 2009-L-155, 2010-Ohio-4695, ¶19, citing *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976), and *State v. Robinson*, 58 Ohio St.2d 478, 480 (1979). "The United States Supreme Court 'has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents.'" *Walker* at ¶20. In sum, a routine search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment of the United States Constitution when performed in accordance with standard procedures in the local police department, and in good faith. *State v. Wotring,* 11th Dist. 2010-L-009, 2010-Ohio-5797, ¶12.

**{¶55}** "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

18

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Id.* at ¶17-18. S*ee also State v. Suttles*, 9th Dist. No. 16333, 1994 Ohio App. LEXIS 418, *6 (Feb. 2, 1994)(court determined that the automobile was lawfully impounded after the police officer made a good faith effort in finding a third party to drive the appellant's vehicle where appellant's driving privileges were suspended.); and *State v. Clay*, 8th Dist. No. 91942, 2009-Ohio-2725, ¶26, quoting *State v. Ross,* 8th Dist. No. 62215, 1993 Ohio App. LEXIS 2622 (May 20, 1993)(police may not seize a defendant's car and conduct an inventory search following a defendant's arrest where it was legally parked and no public concern existed which required the removal of the car from its legally parked place).

{¶56} Appellant contends that if a motion challenging the inventory search had been filed in his case, the controlling case law indicates that such a motion would have been granted by the trial court, and thus, his trial counsel was ineffective for failing to challenge the inventory search.

{¶57} "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence *in the record* showing there was a reasonable probability the result of trial would have differed if the motion had been filed or pursued.' *State v. Gaines,* 11th Dist. Nos. 2006-L-059 and 2006-L-060, 2007-Ohio-1375, ¶17, citing *State v. Clark,* 11th Dist. No. 2002-A-0056, 2003-Ohio-

19

6689, ¶28. 'If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it.' *Gaines, supra*, at ¶17, citing *State v. Edwards* (Sept. 5, 2000), 10th Dist. No. 99AP-958, 2000 Ohio App. LEXIS 3971, at *8." *State v. Kitcey*, 11th Dist. No. 2007-A-0014, 2007-Ohio-7124, ¶56. (Emphasis added).

**{¶58}** We note that at the beginning of the suppression hearing, appellant's counsel specifically stated the issues he intended to raise, and that he was not going to pursue a challenge based on the inventory search:

**{¶59}** "What we're challenging is the stop, the arrest. And in part of the arrest I'm going to submit that based on the evidence that I have from the State of Ohio is that the arrest was based on Mr. Brooks' performance on the various field sobriety exercises.

**{¶60}** " * * *

**{¶61}** "So it's really just the stop and the arrest, Your Honor. And I think once, if the court finds the arrest, it's not really the search of the vehicle, I think the search was incident to an arrest ***or certainly an inventory search***." (Emphasis added.)

**{¶62}** Accordingly, since appellant's counsel decided not to raise the propriety of the inventory search during the suppression hearing, the record contains no evidence regarding the standard procedures in the local police department on tows or inventory searches, or whether there were any other bases to challenge the impoundment of appellant's vehicle, which ultimately led to the discovery of the marijuana. *See Wotring*, supra, at ¶17-18. The record is simply silent on those issues.

20

**{¶63}** As this court has recently stated, "we cannot infer ineffective assistance from a silent record; rather, appellant bears the burden of proving ineffective assistance. *State v. Murphy* (2001), 91 Ohio St.3d 516, 542, 2001-Ohio-112 * * *." *State v. Galloway*, 11th Dist. No. 2000-L-079, 2002-Ohio-4358, ¶49. We concluded in *Galloway* that "[w]hen an appellant makes allegations of the ineffectiveness of his trial counsel based upon facts that do not appear in the record, these allegations should be reviewed through postconviction relief, not on direct appeal. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228 * * *." *Id.* at ¶56.

**{¶64}** In another recent case, *State v. Tucholski*, 11th Dist. No. 2011-A-0069, 2012-Ohio-5591, this court was faced with similar facts. Appellant in that case initially pled "not guilty" to the charges, then moved the trial court to suppress certain oral statements he had made to the police at the time of his arrest. *Id.* at ¶4. Although an evidentiary hearing was scheduled on appellant's suppression motion, he agreed to enter a plea of guilty immediately prior to the hearing in exchange for the state's agreement to dismiss the remaining counts of the indictment. *Id.* at ¶5. On appeal, appellant asserted that he had ineffective assistance of counsel when his counsel had him enter a plea of guilty, thereby waiving any suppression issue on appeal. *Id.* at ¶9.

**{¶65}** In concluding that appellant did not assert a viable basis for reversing his conviction, this court stated as follows:

**{¶66}** "In considering similar situations in which an 'ineffective assistance of trial counsel' argument has been predicated upon alleged evidence not set forth in the trial record, this court has concluded that the substance of the argument cannot be properly reviewed because it is impossible to determine whether the outcome of the case would

have been different. *See State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶51. The same analysis is applicable in this case: i.e. in the absence of any indication of what evidence would have been presented at the suppression hearing, this court is unable to determine if the motion to suppress had any merit. Consequently, appellant cannot show whether the performance of his trial counsel was deficient, or whether the outcome of the proceeding was adversely affected. Accordingly, * * * the 'ineffective assistance' argument cannot be adequately addressed in the context of a direct appeal * * *." *Id.* at ¶14.

{¶67} Based on foregoing authorities and the absence of a record to support appellant's ineffective assistance claim, pursuant to *Strickland*, appellant has failed to demonstrate that his counsel was deficient, or that such deficiency resulted in prejudice to him. In sum, the record in this case is unclear and insufficiently developed regarding the subject suppression issue such that this court cannot discern whether the suppression motion would have had a reasonable probability of success but for counsel's failure to file a motion to suppress the evidence adduced as a result of the inventory search.

{¶68} Appellant's second assignment of error is without merit.

{¶69} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

22