DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of felonious assault with a firearm specification. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellant sets forth four assignments of error:
 {¶ 3} "Assignment of Error I:
 {¶ 4} "Richardson's sentence is unconstitutional because the trial court made findings of fact in determining that the shortest possible sentence should not be imposed.
 {¶ 5} "Assignment of Error II:
 {¶ 6} "Richardson was deprived of his right to a fair trial because the behavior of the courtroom spectators, mostly attributable to his codefendant, was so disruptive that it influenced the jury's ability to render a just verdict.
 {¶ 7} "Assignment of Error III:
 {¶ 8} "Richardson's conviction was against the manifest weight of the evidence due to the lack of credibility of the witnesses, and the inconsistency of their testimony against other evidence.
 {¶ 9} "Assignment of Error IV:
 {¶ 10} "The state's attorney improperly testified during closing arguments, and otherwise made improper comments about the evidence thereby rendering a fair trial impossible."
 {¶ 11} The undisputed facts relevant to the issues raised on appeal are as follows. On September 10, 2005, at approximately 2:45 a.m., Duane Preston was shot during a brawl at an American Petroleum gas station located at the intersection of Monroe Street and Detroit Avenue in Toledo. At the hospital later that night, Preston identified appellant as his assailant. Appellant subsequently was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) with a firearm specification pursuant to R.C. 2941.145. The matter went to trial before a jury and on December 6, 2005, appellant was found guilty of the charges against him. The trial court sentenced appellant to seven years imprisonment for the felonious assault conviction, consecutive to a three-year term for the firearm specification. Appellant filed a timely appeal.
 {¶ 12} In his first assignment of error, appellant asserts his case should be remanded for resentencing because the seven-year sentence for his felonious assault conviction violates State v. Foster,109 Ohio St.3d 1, 2006-856. Appellant does not articulate how his sentence is in violation of Foster. In February 2006, the Supreme Court of Ohio held that portions of this state's sentencing statutes violated a defendant's Sixth Amendment right to a trial by jury. State v. Foster, supra. The court severed those statutes, thereby allowing trial courts full discretion when imposing prison sentences in most situations.Foster, ¶ 100. Foster directed that any case pending on direct review at the time of its release be remanded to the trial court for a new sentencing hearing in accordance with its holding. Foster, ¶ 104.Foster was decided on February 27, 2006; appellant's appeal was pending before this court at that time.
 {¶ 13} Appellee concedes that this case should be remanded for a new sentencing hearing in light of Foster. However, upon our careful review of the transcript of the sentencing hearing and the sentencing judgment entry, we find no indication that the trial court violatedFoster by relying on any of the severed statutes. At appellant's sentencing hearing, the trial court stated that it had "balanced the seriousness and recidivism [factors]," finding appellant's crime to be more serious rather than less serious and recidivism to be more likely rather than less likely. This was in reference to R.C. 2929.12, which is not one of the severed statutes. In its sentencing judgment entry, the only language used by the trial court to explain the reasons for imposing the greater-than-minimum sentence was as follows: "This court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12." R.C. 2929.11 and 2929.12 were not rendered unconstitutional by Foster.
 {¶ 14} The only other statutory reference made by the trial court was in its sentencing judgment entry in which it stated it was imposing the mandatory and consecutive three-year sentence for the firearm specification pursuant to R.C. 2929.14(D)(1), which also was not severed by Foster. Based on the foregoing, we find that the trial court did not reference, either directly or indirectly, any of the statutory sections held unconstitutional by Foster. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 15} In his second assignment of error, appellant asserts he was denied a fair trial due to disruptive behavior of some of the courtroom spectators, which he argues influenced the jury's ability to reach a fair verdict. Appellant does not offer any support for his claim that a "circus-like atmosphere" in the courtroom rendered a fair trial impossible.
 {¶ 16} Appellant refers to one day during the trial when spectators were "flashing gang signs." He also refers to excessive activity in the courtroom caused by spectators walking in and out, and frequently-ringing cell phones, which required specific admonishment from the court. Appellant notes that the jury complained to the court that disruptions made it hard to hear the witnesses and attorneys. Appellant also notes that one of the jurors told the court that one of the spectators asked her for her name and phone number when she saw him outside of court. The juror told the court she responded that would not be appropriate.
 {¶ 17} In State v. Benge, 75 Ohio St.3d 136, 1996-Ohio-227, the Supreme Court of Ohio considered whether an emotional outburst during a murder trial improperly affected the jury. Citing State v. Morales
(1987), 32 Ohio St.3d 252, the Benge court stressed that "[a]bsent clear evidence in the record that the outburst improperly affected the jury, only the trial judge can authoritatively determine whether the jury was disturbed, alarmed, shocked or moved by the demonstration or whether the incident was of such a nature that it necessarily influenced the ultimate verdict of conviction. The answers to those questionsinvariably depend upon facts and circumstances which a reviewing courtcannot ordinarily glean from the record. [Emphasis added.]
 {¶ 18} "Thus, the trial court determines, as a question of fact, whether the demonstration deprived the defendant of a fair trial by improperly influencing the jury. In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed." (Citations omitted.) Morales at 255.
 {¶ 19} In the case before us, we note that appellant did not make any objections or move for a mistrial based on any of the events of which he now complains. As a result, he has waived all but plain error. Crim.R. 52(B); State v. Stallings, 89 Ohio St.3d 280, 285, 2000-Ohio-164.
 {¶ 20} The record reflects that the trial judge responded to the disruptions as they occurred in an effort to prevent further problems. On the second day of the trial, in response to excessive traffic in and out of the courtroom and the open "flashing" of gang signs as people entered and left, the judge prohibited spectators from entering the courtroom after the beginning of proceedings. After consulting with courthouse security, the judge barred the victim's and defendants' family members from the courthouse. Additionally, a spectator who had been winking at one of the jurors during the trial was not permitted back in the courtroom for the duration of the trial after his behavior was observed. Finally, when spectators continued to flash gang signs and talk on cell phones, the judge cleared the courtroom and barred all public access for the remainder of the trial.
 {¶ 21} With regard to the juror who was approached and asked for her phone number by one of the courtroom spectators, the court decided to voir dire the woman to determine whether the incidents had any impact on her ability to serve as a juror. The voir dire was conducted outside the presence of appellant and his codefendant with the agreement of defense counsel. The juror explained that the spectator had seen her at a local drugstore and asked for her phone number; she said she refused. She stated the individual did not attempt to discuss the case with her. She further stated she did not feel intimidated or uncomfortable about continuing her jury service. After the voir dire, the trial continued.
 {¶ 22} This court has thoroughly reviewed the transcript of proceedings in the trial court with particular attention paid to the steps the trial court took to address the various courtroom disruptions. We are unable to find any indication that the incidents mentioned by appellant influenced the jury's verdict and find no plain error. Moreover, the trial judge was clearly in a position to determine whether the jury was improperly influenced; the record indicates that the judge was satisfied with the way the situation was handled and with the subsequent proceedings. We find no clear, affirmative evidence that appellant was denied a fair trial by the behavior of certain courtroom spectators. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 23} In his third assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence because the testimony was not credible or consistent.
 {¶ 24} The "weight of the evidence" refers to the jury's resolution of conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence.State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 {¶ 25} It is primarily for the factfinder to determine the credibility of the witnesses and the weight to be given to their testimony, because the factfinder has the opportunity to see and hear the witnesses and observe their demeanor. State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 26} The state presented the testimony of the responding officers. Officer Kristi Eycke testified that she and her partner, Officer Patrick Sutherland, went to the scene at approximately 2:45 a.m. on September 10, 2005, while they were looking for an unrelated suspect vehicle. As they drove up and got out of their cruiser, the officers heard people screaming that someone had been shot. Eycke saw a man lying on the ground with what appeared to be a bullet wound in the back of his leg. She described the scene as "chaotic" and thick with people. She stated that when she spoke to the victim, Duane Preston, he named "Kimmy Carter" as a suspect.[1] Preston told her someone else was involved but said he did not know that person's name. He described the other person as "a big dude, very large with long braids and gold teeth." Officer Eycke broadcast the description of the other suspect and began looking over the scene for evidence. Eycke found two shell casings and noted a bullet hole in one of the soft drink machines near where the victim fell.
 {¶ 27} Sergeant Kevin Smith testified that he responded to the scene and attempted to locate witnesses. A gas station employee told him that appellant, Jewett Richardson, was involved in the shooting. The employee told Smith that appellant had come up to the cashier's window before the shooting and would be on the security videotape. They reviewed the tape and the employee identified appellant. Smith broadcast a description which included the car the suspects were thought to be driving.
 {¶ 28} Duane Preston, the victim, testified that shortly before 3:00 a.m. on September 10, 2005, he and some friends stopped at the American Petroleum gas station. When they arrived, Preston saw that Kimmy Carter was arguing with an individual named Tony. Preston approached them and tried to break it up. The two men stopped arguing and Preston saw Carter go to his car and get a gun. Preston told Carter to put the gun back in the car, which Carter did. Preston testified that he then saw appellant, whom he did not know, "instigating" by telling Carter someone else said he was going to beat Carter. Preston asked appellant why he was trying to start something and at that point Carter returned to the car and got the gun. Appellant asked Carter to hand him the gun. Carter gave the gun to appellant, who fired one shot in the air. Preston testified that appellant then pointed the gun at him and fired. The bullet missed and Preston turned and ran toward his car. He testified that as he ran, appellant fired another shot, which hit the soda machine, and another which hit him in the leg. Preston testified that he fell to the ground.
 {¶ 29} When the police arrived, Preston told them his assailant had a gold tooth, braids and was wearing a yellow "Lakers" jersey. Later that day, when a detective took a photo array to the hospital, Preston identified appellant as the person who shot him. Preston again identified appellant in court as the person who shot him.
 {¶ 30} Dwaun Hicks, Preston's brother, testified that he was in a parking lot across the street from the gas station at the time of the shooting. Hicks testified he saw Carter and another man he did not know drive up and get out of their car. He watched as the two men argued and saw Carter get a gun from the car. He saw Preston approach Carter but could not hear what they were saying. Hicks testified that he then saw Carter put the gun back in the car. After exchanging words with the person he had arrived with, Carter got the gun out of the car again and gave it to his passenger. Hicks saw the other man fire the gun in the air and then aim at his brother and shoot again. He saw his brother start to run away, heard another shot fired and saw his brother fall. Hicks testified that he then saw the shooter get into a car with Carter and leave. Hicks identified appellant as the person who shot his brother.
 {¶ 31} Tiava Preston, the victim's sister, testified that she arrived at the gas station shortly after 2:00 a.m. on the night of the shooting. When she arrived she saw her brother trying to stop a "confrontation" between Carter and another person. She then saw her brother argue with appellant and heard appellant tell Carter to get the gun. Carter got a gun and slid it across the trunk of the car to appellant, who fired it into the air. Tiava saw appellant shoot at her brother three times, missing the first two and hitting him the third time. Tiava identified appellant as the person who shot her brother.
 {¶ 32} Jessica Skipper testified that she and a friend pulled into the gas station and saw Preston breaking up an argument between Carter and someone she did not know. She then saw appellant and Preston exchange words. Skipper saw Carter give a gun to appellant and appellant fire a shot into the air. People started to scream and run. She saw appellant lower his arm and fire two more times but could not see where he was aiming. Skipper testified that the person who fired the gun was wearing a "Lakers" jersey and had braided hair. She identified appellant as that person.
 {¶ 33} Detective James Couch testified that he went to the hospital the night of the shooting and, after determining that Preston's condition had stabilized, showed him a photo array he had developed which contained a picture of appellant. He stated that Preston immediately identified appellant as the shooter.
 {¶ 34} The jury did not hear any witnesses for the defense. The jurors in this case obviously chose to believe the version of events as relayed by the victim and the other witnesses introduced by the state. Contrary to appellant's assertion, the evidence presented by the state was not inconsistent. We find no indication that the jury "set aside common sense" as appellant claims. Upon thorough review of the transcript of the trial, we are unable to find that the trial court lost its way or created a manifest miscarriage of justice by finding appellant guilty of felonious assault. Based on the foregoing, appellant's third assignment of error is not well-taken.
 {¶ 35} In his fourth assignment of error, appellant asserts that the prosecutor made improper statements during closing argument, thereby rendering a fair trial impossible. Appellant cites several comments made by the prosecutor, some of which were objected to and some of which were not.
 {¶ 36} The conduct of a prosecuting attorney at trial generally shall not be grounds for reversal unless the conduct deprived the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudice appellant. State v. Smith (1984),14 Ohio St.3d 13, 14. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty beyond a reasonable doubt. State v. Maurer (1984),15 Ohio St.3d 239, 267. Moreover, the prosecutor's conduct must be considered in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402,410. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209,219. An accused is guaranteed a fair trial, not a perfect one.
 {¶ 37} Generally, the state may comment freely on "`* * * what the evidence has shown and what reasonable inferences may be drawn therefrom.'" Lott, supra at 165, quoting State v. Stephens (1970),24 Ohio St.2d 76, 82. Prosecutors, however, may not invade the realm of the jury by rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record.Smith, supra at 14. Moreover, they are not to "allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1)." Id.
 {¶ 38} This court has thoroughly reviewed the transcript of the prosecutor's closing argument in this case with particular attention paid to the remarks cited by appellant. The record reflects that defense counsel objected to only one of the remarks. In that instance, appellant claims the prosecutor was "permitted to testify" when he referred to appellant's gold tooth as follows:
 {¶ 39} "* * * [The victim] described him, the braided hair, gold tooth, a large man, and if he smiles at you or you've seen him in court, you know he's got a gold tooth."
 {¶ 40} The trial court overruled defense counsel's objection. Apparently, appellant believes that the prosecutor's comment was improper because there was no evidence appellant actually has a gold tooth. To the contrary, however, several witnesses referred to appellant's gold tooth when they described the shooter. We find that the prosecutor's remark, viewed in light of all of the testimony describing appellant's physical appearance, was not prejudicial.
 {¶ 41} Appellant cites four additional remarks by the prosecutor as improper. Defense counsel did not object to any of them. This court has held that when a defendant has failed to object, review of the alleged improper statements is discretionary and limited to plain error only.State v. Griffin (Nov. 17, 2000), 6th Dist. No. L-98-1215. While Crim.R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. Id. In order to prevail on a claim governed by the plain error standard, the defendant must demonstrate that the outcome of his trial would clearly have been different but for the errors he alleges. Thus, alleged prosecutorial misconduct constitutes plain error only if it is clear that the defendant would not have been convicted in the absence of the improper comments. In such a case, the plain error standard generally presents an almost insurmountable obstacle to reversal.
 {¶ 42} Appellant claims that the prosecutor improperly testified by making the following comment after the jury viewed the gas station surveillance videotape from the time of the shooting: "I submit to you it's Duane Preston running from his attacker who is firing at him." Again, no objection was made. This comment makes no reference to appellant or his role in the shooting. It was undisputed that Duane Preston was shot that night at the gas station and that he ran from his assailant as shots were fired. The prosecutor's comment was not prejudicial and this argument is without merit.
 {¶ 43} Next, appellant takes issue with the prosecutor's references to the lack of any ballistic evidence matching the bullet removed from the victim with a weapon. The prosecutor commented that the bullet fragment removed from Preston's leg "shattered his femur. It's deformed. I submit to you chances of matching that up to anything are pretty nil." Again, this remark did not prejudice appellant. The jury had heard testimony that a weapon was never found and would have been able to conclude that whether or not the bullet was deformed there was no gun with which to match it. This remark was not improper or prejudicial.
 {¶ 44} Fourth, in reference to the detective's testimony regarding having talked to the victim in the hospital the night of the shooting, the prosecutor stated that the detective did not have a lengthy conversation with Preston at that time. He stated: "Here is a man that's just been shot. He's in pain, probably waiting to go into surgery. They're not going into every detail about what happened that night." Appellant asserts there is no basis in the record for those comments. Based on a review of the entire closing argument, it appears the point of this comment was simply to mention that the detective talked to the victim only briefly that day. While the jury had no evidence before it that the victim was in pain when the detective spoke to him at the hospital, there also is no evidence that this comment prejudiced appellant.
 {¶ 45} Finally, appellant claims the prosecutor improperly attempted to invoke sympathy for the victim by commenting on the defense and stating: "It's almost a he deserved it defense. Who cares? Just another young man in the Inner City shot." This statement appears to have been made in response to the defense closing argument in which counsel essentially attacked the victim's credibility while not disputing that he was shot. There is no indication that this remark caused appellant prejudice.
 {¶ 46} It is important to note that, prior to closing arguments, the trial court stated: "As I instructed you in the beginning of this case, closing arguments, like opening statements, are not evidence. Rather, they're part of the trial that are designed to assist you." Further, jurors are presumed to have followed instructions given by the trial court. State v. Fears (1999), 86 Ohio St.3d 329, 334.
 {¶ 47} Upon consideration of the foregoing, we find that the prosecutor did not "invade the realm of the jury" by rendering his personal beliefs regarding guilt and credibility, or allude to matters outside of the record. Because we find that none of the remarks cited by appellant were improper, there is no need to examine them under a plain error standard. Appellant failed to show that but for the alleged instances of prosecutorial misconduct, he would not have been convicted. Accordingly, we find appellant's fourth assignment of error not well-taken.
 {¶ 48} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J.
William J. Skow, J.
George M. Glasser, J.
CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] "Kimmy" Carter, whose full name is Kenneth Carter, was also charged in the shooting and was a codefendant at this trial. He is not a party to this appeal.