[Cite as *State v. Thompson*, 2014-Ohio-2566.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0033** |
| JAMES E. THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Conneaut Municipal Court, Case No. 12 TRC 1344.

Judgment: Affirmed.

*Carly I. Prather,* Assistant Conneaut Law Director, City Hall Building, 294 Main Street, Conneaut, OH 44030. (For Plaintiff-Appellee).

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004. (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, James E. Thompson, appeals the judgment of the Conneaut Municipal Court denying his motion to suppress evidence. Following the court's ruling, appellant was convicted of operating a motor vehicle under the influence of alcohol and related charges based on his no contest plea. At issue is whether the state trooper had probable cause to stop appellant for traffic violations. For the reasons that follow, we affirm.

{¶2} On November 27, 2012, appellant was cited for operating a motor vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a); operating a motor vehicle with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(d); and a marked lane violation, in violation of R.C. 4511.33. Appellant pled not guilty to the charges and filed a motion to suppress.

{¶3} The trial court held a suppression hearing. Trooper Michael Royko of the Ohio State Highway Patrol testified that on Wednesday, November 21, 2012, the night before Thanksgiving, at about 9:30 p.m., he was on routine patrol. At that time, the dispatcher advised him that an identified citizen had called in a report that the driver of a red Chevrolet Aveo was driving recklessly on Interstate 90 eastbound west of the State Route 7 exit.

{¶4} Trooper Royko located the suspect vehicle and, while driving behind it, saw the driver, later identified as appellant, commit three marked lane violations by driving over the fog line on the right side of the road three times.

{¶5} The trooper testified he also saw appellant following another vehicle too closely and continually braking his vehicle. The trooper said that, in order to travel at a safe distance behind another vehicle, for every ten miles per hour, the driver should maintain a distance of one car length. Appellant was driving at 50 mph so there should have been five car lengths between him and the car in front of him. However, appellant was travelling only three car lengths behind the car he was following.

{¶6} Trooper Royko said he stopped appellant on the Route 7 exit ramp from Interstate 90 eastbound in Conneaut. He approached appellant's vehicle on the driver's side. As he made contact with appellant, he saw appellant's eyes were bloodshot and

2

glassy. He also detected a moderate odor of an alcoholic beverage coming from inside the vehicle.

{¶7} Trooper Royko asked appellant for his proof of insurance. In looking for it, appellant fumbled through papers in his glove compartment while dropping papers on the passenger floor.

{¶8} Trooper Royko then asked appellant to exit his car and to take a seat in the front passenger seat of his cruiser. Once appellant was seated in the cruiser, the trooper noticed a moderate odor of alcohol coming from him. The trooper again saw that appellant's eyes were bloodshot and glassy.

{¶9} Because Trooper Royko suspected appellant was under the influence of alcohol, he asked him to perform field sobriety tests and he complied. The trooper administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Trooper Royko said he was taught how to administer each of these tests in the Alcohol Detection, Apprehension, and Prosecution course he took at the police academy. He said that before each test, he instructed appellant on how to perform the test. Appellant failed all three field sobriety tests.

{¶10} Trooper Royko concluded that, based on his experience, training, education, and observation of appellant's performance of the field sobriety tests, appellant was under the influence of alcohol. He arrested appellant for operating a motor vehicle under the influence. The trooper then transported him to the Conneaut Police Department. Upon arrival at the station, Trooper Royko asked appellant to submit to a breathalyzer test and he complied. The result of appellant's test was .145, nearly twice the legal limit.

**{¶11}** Trooper Royko testified his cruiser was equipped with a dash camera. He started recording when he began following appellant and saw appellant commit a marked lane violation. He ended the recording when they entered the sally port of the police department. The state played the video in court.

**{¶12}** Appellant did not present any witnesses or evidence on his behalf. Thus, the state's evidence was undisputed.

**{¶13}** Following the hearing, the trial court entered judgment denying appellant's motion to suppress. The court found the video showed his vehicle was weaving in its lane and went over the fog line six times. Further, the court found the video shows appellant was operating his vehicle too closely to the vehicle ahead of him and did not maintain a safe distance from that vehicle. The court thus found that Trooper Royko had legal grounds to stop appellant. Further, the court found the trooper noticed that appellant's eyes were bloodshot and glassy and that he had a moderate odor of alcohol about him. Thus, the court found the trooper had sufficient grounds to ask appellant to submit to field sobriety tests. The court found that Trooper Royko administered the HGN test, the walk-and-turn test, and the one-leg-stand test in substantial compliance with NHTSA standards, following which he arrested appellant and administered a breath test.

**{¶14}** Appellant subsequently pled no contest to operating a motor vehicle under the influence of alcohol and a marked lane violation. The court accepted the plea and found appellant guilty of these charges. The court sentenced him to 33 days in jail, suspending 30 days on the condition that he complete an alcohol intervention program. The court stayed execution of the sentence pending appeal.

4

**{¶15}** Appellant appeals the trial court's denial of his motion to suppress, asserting three assignments of error. For his first assigned error, he alleges:

**{¶16}** "The trial court erred in failing to grant Appellant's Motion to Suppress evidence based upon the absence of probable cause to stop Appellant's vehicle."

**{¶17}** Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and is in the best position to resolve factual questions and assess the credibility of the witnesses. *Id.* An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by some competent, credible evidence. *State v. Norwood*, 11th Dist. Lake No. 2012-L-094, 2013-Ohio-4293, ¶16. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

**{¶18}** First, appellant argues that his stop was based on an anonymous tip and that such tips are inadequate to provide reasonable suspicion to justify a stop. However, the tip in this case was not anonymous. To the contrary, the informant was a citizen driver who provided his name and address when he made his report to the 911 operator. Such informants are presumed reliable. *Norwood*, *supra*, at ¶21. In any event, appellant's argument lacks merit because Trooper Royko stopped appellant based on *his own observations* of appellant's traffic violations and erratic driving, rather than information provided by the informant. In *State v. Pandolfi*, 11th Dist. Lake No. 2001-L-061, 2002-Ohio-7265, an identified citizen reported the defendant was driving

5

erratically. The officer located the defendant and saw him drive left of center. This court held the officer had probable cause for the stop based on his own observations, but that, even if he had not seen the defendant's erratic driving, the informant's tip would have provided reasonable suspicion for the stop. *Id.* at ¶33, 26.

{¶19} Second, appellant argues that Trooper Royko did not have probable cause to stop his vehicle because the trooper only testified that appellant crossed the fog line on the right side of the road three times.

{¶20} A stop is constitutional if it is supported by probable cause. *Ravenna v. Nethken*, 11th Dist. Portage No. 2001-P-0040, 2002-Ohio-3129, ¶30-31.

{¶21} Moreover, "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11 (1996). This court has held that if a police officer observes any traffic law violation, sufficient grounds exist for the officer to stop the vehicle. *State v. Wojtaszek*, 11th Dist. Lake No. 2002-L-016, 2003-Ohio-2105, ¶16, citing *State v. Brownlie*, 11th Dist. Portage Nos. 99-P-0005 and 99-P-0006, 2000 Ohio App. LEXIS 1450, *6 (Mar. 31, 2000), citing *Erickson*, *supra*, at 11-12. Where a police officer witnesses a minor traffic violation, the officer is justified in making a limited stop for the purpose of issuing a citation. *Brownlie, supra; State v. Brickman*, 11th Dist. Portage No. 2000-P-0058, 2001 Ohio App. LEXIS 2575, *5 (June 8, 2001).

{¶22} Further, in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, the Supreme Court of Ohio held that where the trooper observed the defendant cross the fog line twice, the trooper reasonably concluded that the defendant's driving violated

R.C. 4511.33, and the trooper not only had a reasonable and articulable suspicion to stop appellant's vehicle, he also had probable cause. *Id.* at ¶24.

{¶23} Here, Trooper Royko testified that he saw appellant commit three separate marked lane violations by driving over the fog line three times. Upon reviewing the dash-cam video, the trial court found that the video documented six marked lane violations. R.C. 4511.33 provides: "A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Appellant presented no evidence that, before crossing the fog line, it was not practicable to drive entirely within one lane of traffic or that before crossing the fog line, he first ascertained that such movement could be safely made. Thus, appellant presented no evidence justifying his crossing over the fog line. In addition, Trooper Royko observed appellant following another vehicle too closely, in violation of R.C. 4511.34(A) ("[t]he operator of a motor vehicle * * * shall not follow another vehicle * * * more closely than is reasonable or prudent * * *.").

{¶24} Appellant's reliance on *Wickliffe v. Petway*, 11th Dist. Lake Nos. 2011-L-101 and 2011-L-102, 2012-Ohio-2439, is misplaced because in *Petway*, the defendant's vehicle did not cross the marked lane; rather, the defendant's vehicle's left tires briefly went *onto* the center line dividing the lanes without passing into the neighboring lane. In contrast, here, the trooper testified, and the trial court found, that appellant's vehicle went over the fog line. Appellant concedes in his brief that he "crossed" the fog line three times. Our review of the video confirms that his vehicle crossed over the fog line several times.

**{¶25}** Appellant also argues the trial court abused its discretion in finding that appellant activated his turn signal more than a mile before his exit and that he was driving too closely to the vehicle in front of him because appellant was not charged with offenses based on this conduct. However, in *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-204, the Supreme Court of Ohio stated that "the constitutionality of a * * * traffic stop does not depend on the issuance of a citation." *Id.* at ¶21. Further, "[t]he failure to issue a traffic citation when there is an indication of a potentially far more significant crime is easily excused when more pressing issues are being addressed." *Id.* at ¶20. Here, appellant was charged with operating a motor vehicle under the influence of alcohol, a far more serious offense than driving too closely to the vehicle in front of him or failing to properly activate his turn signal. In any event, while appellant was not cited for these additional traffic violations, the trial court's findings concerning them were pertinent to whether the trooper had probable cause to stop appellant.

**{¶26}** Because appellant crossed over the fog line at least three times, in violation of R.C. 4511.33, and followed a vehicle too closely, in violation of R.C. 4511.34(A), the trial court did not err in finding that Trooper Royko had probable cause to stop him.

**{¶27}** Appellant's first assignment of error is overruled.

**{¶28}** For his second assignment of error, appellant contends:

**{¶29}** "Defendant-Appellant alleges that the Trial Court erred in failing to grant Appellant's Motion to Suppress evidence based upon the undertaking of field sobriety tests and breath tests of Appellant without probable cause."

8

{¶30} As noted above, when a police officer observes a traffic violation, he is justified in initiating a limited stop for the purpose of issuing a citation. *Brickman*, *supra.* However, a request that a driver perform field sobriety tests constitutes a greater invasion of liberty than the initial stop, and "must be separately justified by specific, articulable facts showing a reasonable basis for the request." *State v. Evans*, 127 Ohio App.3d 56, 63 (11th Dist.1998). Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances. *Evans*, *supra*, at 63. Appellant argues that Trooper Royko improperly detained him in order to conduct field sobriety tests.

{¶31} In *Evans*, this court set forth a non-exclusive list of factors to be considered when determining whether a police officer has a reasonable suspicion of intoxication justifying the administration of field sobriety tests. That list, on which no one factor is dispositive, consists of the following:

{¶32} (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (Whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly,

on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ('very strong,' 'strong,' 'moderate,' 'slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. *Id.* at f.n.2.

{¶33} In *Brickman, supra*, this court stated that "courts generally approve an officer's decision to conduct field sobriety tests when [the] officer's decision was based on a number of factors [set forth in *Evans*]." *Brickman, supra*, at *8, quoting *Evans, supra*.

{¶34} Here, several *Evans* factors were present. First, the stop occurred the night before Thanksgiving. Second, substantial evidence was presented of appellant's erratic driving before the stop. Appellant concedes he "crossed" the fog line three times. The trial court found, based on the video, that appellant was weaving and crossed the fog line six times. Further, appellant was driving too closely to and did not maintain a safe distance from the vehicle in front of him. In addition, the trooper stated that appellant was continually braking his vehicle. Third, the trooper noticed that appellant's eyes were glassy and bloodshot. Fourth, the trooper detected an odor of

alcohol coming from the vehicle. It is noteworthy that appellant was the only individual in the vehicle. Further, while the trooper was seated next to appellant in his cruiser, the trooper detected an odor of alcohol coming from appellant's person. Fifth, the trooper described the intensity of the odor of alcohol coming from appellant's vehicle and later from appellant himself as moderate, as opposed to slight. Sixth, in attempting to respond to the trooper's request for his proof of insurance, appellant was fumbling through papers in his glove compartment, dropping various papers to the floor of the passenger compartment.

{¶35} In addition, Trooper Royko described his extensive experience in dealing with drunk drivers. He said he has arrested about 150 impaired drivers. He has also witnessed another 100 impaired drivers while on traffic stops with other troopers.

{¶36} In light of the presence of the foregoing *Evans* factors and Trooper Royko's extensive experience in dealing with drunk drivers, the trial court did not err in finding the trooper had a sufficient basis to ask appellant to submit to field sobriety tests.

{¶37} Appellant's second assignment of error is overruled.

{¶38} For his third and final assignment of error, appellant alleges:

{¶39} "The trial court erred in failing to suppress the results of field sobriety tests."

{¶40} The Ohio Supreme Court has recognized that, since the amendment of R.C. 4511.19 by the General Assembly in 2003, field sobriety tests need not be conducted in strict compliance with standardized testing procedures. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶9. "Instead, an officer may now testify concerning

11

the results of a field sobriety test administered in substantial compliance with the testing standards." *Id.*

{¶41} R.C. 4511.19(D)(4)(b) provides that evidence and testimony regarding the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."

{¶42} As a preliminary matter, the state argues that appellant's allegations in his suppression motion with regard to the field sobriety tests were not specific and therefore only required the state to present general testimony to demonstrate substantial compliance. We note the only allegation made by appellant in his motion to suppress regarding field sobriety tests was that the state failed to administer them in substantial compliance with applicable standards. Appellant did not allege any specific grounds for suppressing the field sobriety test results. This court has held that an accused's failure to provide any specificity in his motion to suppress relieves the state of the duty to specifically address the regulatory standards for such tests. *State v. Barnett*, 11th Dist. Portage No. 2006-P-0117, 2007-Ohio-4954, ¶28.

{¶43} This court in *Barnett* held that, in order to require a hearing on a motion to suppress evidence, the defendant must state the motion's factual and legal bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. *Id.* at ¶29, citing *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. Further,

12

only after the defendant satisfies his burden of giving notice of the issues to be determined does the burden shift to the state to prove it substantially complied with the regulations. *Id.* at ¶30. In order to require the state to respond specifically to issues raised in a motion to suppress, the defendant must raise issues that are supported by facts specific to those issues. *Id.* at ¶31. Unless the defendant sets forth facts that support the allegations that specific regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight. *Id.* at ¶32.

**{¶44}** In *Barnett*, the defendant's motion to suppress contained no specific factual allegations and no legal bases in support. Barnett simply made the conclusory statement that the officer failed to comply with the NHTSA manual. This court held that, because the defendant failed to specify in his motion the NHSTA standards that were allegedly violated, the officer's general testimony that his testing procedures complied with the NHSTA manual was sufficient to overcome appellant's motion to suppress. *Id.* at ¶35.

**{¶45}** Here, appellant failed to specify in his motion the NHSTA standards that were allegedly violated. He simply said the state failed to administer the field sobriety tests in substantial compliance with applicable standards. As a result, the trooper's general testimony that his testing procedures complied with the standard procedures for such tests was sufficient to overcome appellant's motion to suppress.

**{¶46}** Appellant argues the state failed to present evidence of the NHTSA or other testing standards and the trooper's substantial compliance with those standards. We do not agree.

**{¶47}** Trooper Royko testified that he has had training in the administration of field sobriety tests at the police academy in the Alcohol Detection, Apprehension, and Prosecution course involving drunk drivers. He is also an instructor of this course. Further, he has been certified as a drug and alcohol detection expert.

**{¶48}** Appellant conceded during the suppression hearing that the HGN test, the walk-and-turn test, and the one-leg-stand test, which Trooper Royko administered to him, are all included in the National Highway Traffic Safety Administration (NHTSA) manual and that Ohio courts have recognized each of these tests as reliable.

**{¶49}** Trooper Royko said he first administered the HGN test to appellant. The trooper described the standard procedure for administering this test. He said the officer is to hold the stimulis (usually a pen) about twelve inches from the defendant's face. The officer instructs the defendant to follow the tip of the pen with his eyes and not to move his head. The officer moves the stimulis gradually out of the defendant's field of vision. He said that "nystagmus" is the inadvertent jerking of the eye and that, according to the NHTSA, the onset of nystagmus at an angle less than 45 degrees indicates the defendant is under the influence of alcohol. The officer checks each of the defendant's eyes to determine whether nystagmus occurs at an angle less than 45 degrees. In addition to Trooper Royko's reference to the NHTSA in connection with this test, we note that the standard procedure for this test as described by the trooper is the procedure adopted by the NHTSA manual. *See State v. Brooks*, 11th Dist. Lake No. 2011-L-049, 2013-Ohio-58, ¶8. Trooper Royko said he has administered the HGN test about 300 times.

{¶50} Trooper Royko said he administered the HGN test to appellant in compliance with this standard procedure, and appellant exhibited all six clues of impairment in each eye, indicating appellant was impaired due to alcohol consumption.

{¶51} Next, Trooper Royko administered the walk-and-turn test to appellant. He described the standard procedure for administering this test. This test has two phases, the instructional phase and the walking phase. In the instructional phase, the officer instructs the defendant to imagine a straight line; to put his right foot in front of his left foot, touching heel to toe; to keep his hands down at his sides; and to stay in that position until given instructions. In the walking phase, the officer instructs the defendant to take nine heel-to-toe steps on the line, turn, and then take nine heel-to-toe steps back. The officer demonstrates the first three steps and the turnaround. The standard procedure for this test as described by Trooper Royko is the procedure adopted by the NHTSA manual. *See Brooks, supra*, at ¶14. The trooper said he has administered this test about 200 times.

{¶52} The trooper said he administered this test to appellant in compliance with this standard procedure. Appellant was unable to keep his balance three times. At one point, he lost his balance and almost fell over. Appellant exhibited eight clues of impairment, indicating he was impaired.

{¶53} Finally, Trooper Royko administered the one-leg-stand test. He described the standard procedure for administering this test. He said the officer tells the defendant to put his hands down at his sides and to keep his feet together. The officer then tells the defendant that, when instructed, he is to elevate his foot six inches off the ground. He can raise either foot, but his foot must be parallel to the ground. He is then to look at

the tip of the elevated toe and to count out loud, 1001, 1002, etc. until he is told to stop. If he puts his foot down for any reason, he is to pick it back up and continue counting from where he left off. The officer then demonstrates the test. The standard procedure for this test as described by Trooper Royko is the procedure adopted by the NHTSA manual. *See Brooks*, *supra*, at ¶10. The trooper said he has administered this test about 200 times.

{¶54} The trooper said he administered this test to appellant in compliance with this standard procedure. Appellant swayed; lowered his foot; and, after counting to 1007, put his foot down and said that was all he could do. Appellant exhibited all four clues of impairment, which indicated he was impaired.

{¶55} Because Trooper Royko adhered to procedures adopted by the NHTSA manual in administering the field sobriety tests, the trial court did not err in finding that the trooper administered these tests in substantial compliance with those standards.

{¶56} Appellant's third assignment of error is overruled.

{¶57} For the reasons stated in this opinion, the assignments of error lack merit and are therefore overruled. It is the order and judgment of this court that the judgment of the Conneaut Municipal Court is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

16