[Cite as *In re S.C.*, 2014-Ohio-3905.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100396**

# IN RE: S.C.
# A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 13105475

**BEFORE:** Keough, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

**ATTORNEY FOR APPELLANT**

Charlyn Bohland
Office of the Ohio Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Lon´Cherie´ D. Billingsley
Assistant County Prosecutor
Justice Center
1200 Ontario Street, 9th Floor
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Appellant S.C. appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that found him delinquent and placed him in the custody of the Ohio Department of Youth Services ("ODYS"). S.C. contends that the adjudication of delinquency was not supported by sufficient evidence and against the manifest weight of the evidence, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

## I. Background

**{¶2}** On April 19, 2013, a three-count complaint was filed in the juvenile court alleging that S.C., who was 17 years old, was a delinquent child for receiving stolen property in violation of R.C. 2913.51(A), with a firearm specification (Count 1), and carrying concealed weapons in violation of R.C. 2923.12(A)(2) (Counts 2 and 3), all fourth-degree felonies if committed by an adult. The juvenile court held a hearing on July 2, 2013 and found S.C. delinquent as charged. The court subsequently committed him to the custody of ODYS for a minimum of a year and one-half and a maximum of until his 21st birthday.

**{¶3}** At the hearing, Nicole Raver testified that when she arrived home on April 4, 2013, she discovered that her home had been vandalized and various items stolen. Raver filed a police report regarding the stolen items, which included her Browning Buck Mark .22 caliber pistol. Raver testified that the pistol had a wood grain handle, a unique gold trigger, and green sights. She identified the gun in court as the gun that had been

stolen from her.

{¶4} Warrensville Heights police officer Wesley Haynes testified that he was working security at South Pointe Hospital on April 18, 2013. At approximately 11:45 p.m., he observed two males and a female enter the emergency room. One of the males had been shot in the head. Haynes followed the victim, Aaron Boddy, into a treatment room and asked him what had happened. After speaking with the victim, Haynes spoke with the female and male who had accompanied Boddy to the hospital. Haynes also called for police backup.

{¶5} Haynes testified that the woman, later identified as Crystal Perry, was hysterical and did not provide any information to him. He said that the male, S.C., gave his name and date of birth, and said there had been an incident near Lee Road in Cleveland but he did not know what had happened.

{¶6} While Haynes was talking to Perry and S.C., other Warrensville Heights police officers arrived at the hospital. Officer Randy Sobczyk testified that when he arrived, he saw a Ford Focus parked near the emergency room entrance and saw three persons — Antonio Boddy, Perry, and S.C. — outside the vehicle talking to Haynes. After speaking with Haynes, Sobczyk inspected the vehicle. He observed that the windows were shattered and there were multiple bullet holes in the car. Sobczyk also saw an indentation on the driver's side door that indicated a bullet had come from inside the car. When Sobczyk walked to the rear passenger side of the car, he looked in the

window and saw the butt of a handgun on the floor, sticking out from under the front passenger seat. Sobczyk immediately ordered that all suspects be secured, at which point Antonio Boddy ran away. Sobczyk chased him but did not catch him. Meanwhile, Haynes secured S.C. and Perry in separate police cars and then, because the incident leading to the shooting had occurred in Cleveland, advised the Warrensville Heights dispatcher to contact the Cleveland police department to respond to the scene.

{¶7} Cleveland police officer Sareen Saffo testified that he and his partner, officer Victoria Przybylski, arrived at the hospital at approximately 12:20 a.m. He said that after speaking with Perry, he did an inventory search of the car because it was to be towed. Saffo said that he observed two firearms on the floor by the rear passenger seat of the car. One was a .22 Buck Mark with a wood handle and gold trigger and a magazine and ten live rounds; the other was a Springfield Armory .45 with a magazine and seven live rounds. Saffo identified two guns in court as those found in the car.

{¶8} Officer Przybylski testified that she was assigned to interview everyone at the scene and write the police report. She said that S.C. told her that he and the others had been parked on Holly Hill. When he saw a white PT Cruiser drive by, S.C. told Perry there was about to be "some mess," and they needed to get in the car and leave. S.C. told Przybylski that as they were trying to get in the car to leave, the PT Cruiser turned around and drove by them, and the people inside started shooting at them. Przybylski stated that Aaron yelled that he had been shot, so they drove to a gas station on

Miles Road where they switched drivers and then drove to the hospital.

{¶9} Officer Przybylski testified that S.C. told her that before they switched drivers, Perry was driving, Aaron was in the front passenger seat, Antonio was in the passenger seat behind the driver, and he was in the rear passenger seat. Przybylski said that S.C. told her that he knew about the guns that were found in the car but denied that they were his; S.C. also denied firing the guns. Przybylski said S.C. thought the "whole thing" was a "joke" and told her "I've beat other stuff. I'll beat this too."

{¶10} On cross-examination, Przybylski acknowledged that she had not included any information about S.C.'s demeanor in the police report, nor S.C.'s statement about where the occupants of the car had been sitting, even though she had included direct quotes regarding other details. Przybylski testified that where S.C. had been sitting in the car was not important when she wrote the report because he was not being charged with shooting anyone, and that she remembered the details of the case because she had spent "quite a few hours" with S.C.

{¶11} Officer Przybylski said that as she was standing outside the Ford Focus, she saw part of a firearm sticking out from under the front passenger seat. She also observed an exit hole on the inside of the driver's side passenger door that she said, in light of her training and experience, meant that someone had been shooting from inside the car.

{¶12} Officer Przybylski testified that she assisted with the inventory search of

the vehicle and when the inventory was complete, she informed S.C. and Perry that they were under arrest and told them the charges. She and officer Saffo then transported Perry to the Justice Center for booking; Przybylski said they took S.C. back to their district police station and, after completing the police report, took him to the juvenile detention facility.

{¶13} After the trial court denied S.C.'s Crim.R. 29 motion for acquittal, it found him to be delinquent and subsequently, committed him to the custody of ODYS for a minimum of a year and one-half and a maximum of up to his 21st birthday. This appeal followed.

## II. Analysis

### A. Sufficiency of the Evidence

{¶14} In his first assignment of error, S.C. contends that there was insufficient evidence to support the trial court's adjudication of delinquency for receiving stolen property and carrying a concealed weapon.

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶16} R.C. 2913.51(A), prohibiting receiving stolen property, provides that "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." S.C. contends that the state failed to produce evidence that he knew or had reasonable cause to believe the gun was stolen.

{¶17} In determining whether a defendant knew or should have known property had been stolen, appellate courts consider (1) the defendant's unexplained possession of the merchandise, (2) the nature of the merchandise, (3) the frequency with which such merchandise is stolen, (4) the nature of the defendant's commercial activities, and (5) the relatively limited time between the theft and recovery of the merchandise. *State v. Prater*, 8th Dist. Cuyahoga No. 80678, 2002-Ohio-5844, ¶ 9. Furthermore, possession of stolen property, if not satisfactorily explained, is ordinarily a circumstance from which a trier of fact may reasonably infer, in light of surrounding circumstances, that the person in possession knew the property had been stolen. *In re B.B.*, 8th Dist. Cuyahoga No. 81848, 2003-Ohio-5920, ¶ 19, citing *State v. Arthur*, 42 Ohio St.2d 67, 325 N.E.2d 888 (1975).

**{¶18}**  Here, S.C.'s possession of Nicole Raver's gun was not satisfactorily explained in light of the surrounding circumstances.  S.C. is a 17-year-old who cannot legally possess a gun in the state of Ohio, and he had no commercial purpose for possessing the gun, which was apparently used in a shoot-out.  Moreover, the gun had been stolen from Nicole Raver's home only several weeks prior to the shoot-out.  Because S.C.'s possession of the stolen firearm was not adequately explained in light of the circumstances, the trier of fact could infer that S.C. knew, or had reason to believe that the gun had been stolen.

**{¶19}**  S.C. also contends that the state failed to produce evidence that he "received" or "retained" the Browning Buck Mark .22 caliber gun because there was no evidence that he exercised dominion or control of the gun.  Possession of stolen property for purpose of the receiving stolen property statute may be constructive as well as actual. *State v. Hankerson*, 70 Ohio St.2d 87, 90, 434 N.E.2d 1362 (1982), syllabus. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.  *Id.*  Knowledge of illegal goods on one's property is sufficient to show constructive possession.  *Id.* at 93.

**{¶20}** Here, although S.C. did not own the car in which the guns were found, he admitted to officer Przybylski that he knew the guns were in the car.  Furthermore, as discussed above, he knew or had reason to believe that the Browning Buck Mark pistol

was stolen. Additionally, the gun was found on the floor of the car immediately in front of where S.C. was sitting. And there were indentations on the inside of the car that demonstrated that someone had been shooting from inside the car. Construed in a light most favorable to the state, a rational trier of fact could find that S.C. exercised dominion and control of the stolen gun. Accordingly, there was sufficient evidence to sustain his conviction for receiving stolen property in violation of R.C. 2913.51(A).

{¶21} There was also sufficient evidence that S.C. was delinquent for carrying concealed weapons. The state charged that S.C. was delinquent because he "did knowingly carry or have concealed on his person or concealed ready at hand a handgun," in violation of R.C. 2923.12(A)(2). Where the defendant does not actually possess the firearm at the time of arrest, the state may prove that a defendant violated R.C. 2923.12(A) through evidence of constructive possession. *State v. Edmonds*, 8th Dist. Cuyahoga No. 90931, 2009-Ohio-231, ¶ 15; *State v. Tisdel*, 8th Dist. Cuyahoga No. 87516, 2006-Ohio-6763, ¶ 26.

{¶22} S.C. contends that the state did not prove that he carried or had a gun concealed on his person or at hand because there was no evidence that he exercised "dominion and control" over the guns. He argues that there was no evidence that he owned the car in which the guns were found, he never claimed ownership of the guns and denied firing them, and there was no fingerprint evidence or gunshot residue connecting him to the guns. He also notes that unlike Antonio Boddy, he never attempted to flee

(which would suggest consciousness of guilt) but stayed and cooperated with the police. Therefore, he contends, any inference that he had control of the guns merely because he admitted that he was sitting in the rear passenger seat close to where the guns were found is not supported by the evidence. We disagree.

{¶23} The state may prove dominion and control solely through circumstantial evidence. *Edmonds* at ¶ 15, citing *State v. Mack*, 9th Dist. Summit No. 22580, 2005-Ohio-5808. The state presented evidence that S.C. was sitting in the rear passenger seat of the Ford Focus after he and his friends jumped in the car to avoid the bullets coming from the PT Cruiser. The state also presented evidence that there were indentations on the inside of the Focus from bullets that had been fired from inside the car. There was evidence that two handguns were found on the floor between the passenger and front seat, directly in front of where S.C. was sitting during the shoot-out, and S.C. admitted that he knew the guns were in the car. Although the evidence is circumstantial, construing this evidence in a light most favorable to the state, the only possible inference is that S.C. had constructive possession of the guns. Accordingly, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶24} The first assignment of error is overruled.

B. Manifest Weight of the Evidence

{¶25} In his second assignment of error, S.C. contends that the trial court erred in

finding him delinquent for receiving stolen property and carrying concealed weapons because the finding was against the manifest weight of the evidence. In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 388, 1997-Ohio-52, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶26} S.C. contends that he was convicted based solely on his alleged statement to officer Przybylski regarding his location in the car but that Przybylski's testimony was inconsistent and unreliable because it was not supported by the police report. He further contends that there were some inconsistencies between Przybylski and Saffo's testimony about "minor details" that call into question the reliabilty of Przybylski's testimony. Finally, he contends that Antonio Boddy's flight from the scene after the police found the guns indicates that Boddy, not S.C., was guilty.

{¶27} We find that the trier of fact did not lose its way in finding S.C. delinquent for receiving stolen property and carrying concealed weapons. The trier of fact is in the

best position to weigh the evidence and credibility of witnesses. As the reviewing court, we find that the judge could reasonably conclude from the substantial evidence presented by the state that the offenses were proven beyond a reasonable doubt. Accordingly, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that the adjudication of delinquency should be reversed and a new trial ordered.

{¶28} The second assignment of error is therefore overruled.

C. Ineffective Assistance of Counsel

{¶29} In his third assignment of error, S.C. contends that he was denied his constitutional right to effective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that counsel's representation was deficient because it "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶30} S.C. contends that counsel was ineffective for not filing a motion to suppress because there was no evidence that he knowingly, intelligently, and voluntarily waived his right to an attorney before giving his statement to Przybylski about where he was sitting in the car. S.C. contends that the judge concluded that he had control of the guns because they were found on the floor of the car near where he was sitting but,

because there was no evidence other than his statement regarding his location in the car, the result of the trial would have been different if his statement had been suppressed.

{¶31} We cannot infer ineffective assistance of counsel from a silent record, however. *State v. Murphy*, 91 Ohio St.3d 516, 542, 2001-Ohio-112, 747 N.E.2d 765; *State v. Brooks*, 11th Dist. Lake No. 2011-L-049, 2013-Ohio-58, ¶ 63; *State v. Whatley*, 2d Dist. Clark No. CA 2303, 1987 Ohio App. LEXIS 8182, *4 (July 6, 1987). When a defendant makes allegations of the ineffectiveness of his trial counsel based on facts that do not appear in the record, those allegations should be reviewed through postconviction relief, not on direct appeal. *State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983).

{¶32} There is no evidence whatsoever in the record regarding whether S.C. was given his *Miranda* rights and did or did not waive his right to counsel. Accordingly, we are unable to determine whether a motion to suppress would have had any merit. Because it is impossible to determine whether the outcome of the proceeding would have been different had such a motion been filed, we cannot adequately address the ineffective assistance of counsel argument in the context of this direct appeal. *See Brooks, supra*; *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 51.

{¶33} In light of the absence of a record to support his ineffective assistance of counsel claim, S.C. has failed to demonstrate that his counsel was deficient or that such deficiency resulted in prejudice to him. The third assignment of error is therefore

overruled.

{¶34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR